# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

---

| | |
|---|---|
| In Re:            ) | |
|            ) | |
| JOHN MALONE        ) | |
|            ) | **Chapter 13** |
|            ) | **Case No. 24-10885-CJP** |
|        **Debtor**        ) | |
|            ) | |

---

## MOTION FOR ENTRY OF ORDER AUTHORIZING AND APPROVING PRIVATE SALE OF PROPERTY OF REAL ESTATE FREE AND CLEAR OF LIENS, CLAIMS AND ENCUMBRANCES

## 26 SAVIN HILL AVENUE
## DORCHESTER, MASSACHUSETTS

Now comes, John Malone, ("Debtor") by and through undersigned counsel, and by this motion ("Motion") seeks issuance and entry of an order authorizing and approving the sale of of real property located at 26 Savin Hill Avenue, Dorchester, Massachusetts and any improvements thereon (collectively, the "Property"), as described more fully below, to Janyuzak Almazbek uulu, of 42 Summer Street, West Roxbury, MA 02132 (the "Purchaser"), for Two Hundred Forty Thousand and 00/100 Dollars, along with a grant of lifetime use and occupancy to Debtor, at no additional cost, and pursuant to the terms and conditions set forth herein (the "Sale"), free and clear of all liens, claims, interests, and encumbrances, pursuant to 11 U.S.C. § §363(b) and (f). In support of this Motion, the Debtor respectfully states as follows:

## JURISDICTION AND VENUE

The Court's exercise of jurisdiction is proper pursuant to 28 U.S.C. §§ 157 and 1334.

Venue is proper pursuant to 28 U.S.C. §§ 1391, 1408 and 1409. This is a core proceeding pursuant

to 28 U.S.C. §157(b), and the Court may enter final orders on these matters. The predicates for

the relief requested herein are Sections 105(a), 363, and 365 of Title 11, U.S. Code, 11 U.S.C.

§§ 101 et seq. (the "Bankruptcy Code"), Rules 2002, 6004, 6006 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules") and Rules 2002-5, 6004-1 and 6006-1 of the

Massachusetts Local Bankruptcy Rules ("MLBR").

## BACKGROUND

The Cases:

1. On May 08, 2024 John Malone ("Debtor") filed a petition for relief under Chapter 13 of the
Bankruptcy Code with this Court.

2. The Debtor filed scheduled claims as liens on the Property as follows

   A. Fed Home Loan Mortgage Corp as Trustee, in the amount of  $125,799.01.

   B. The Bank of New York Mellon c/o Bank of America, N.A. in the amount of $26,393.49

   C. Massachusetts Dept. of Revenue Bankruptcy in the amount of $16,637.05.

   D. Massachusetts Dept. of Revenue Bankruptcy in the amount of $4,205.02.

   E. City of Boston Real Estate Taxes in the amount of $11,714.17.

   F. Boston Water and Sewer Commission in the amount of $22,722.38.

3. The Debtor also scheduled unsecured claims as follows:

   A. National Grid in the amount of $ $5,548.76.

   B. Discover Credit Card in the amount of $ $1,098.90.

4. On June 05, 2024, the Debtor filed his First Chapter 13 Plan, which contemplated a sale of
the Property to which proceeds received therefrom were to make a lump sum 100% payoff
to all allowable claimants. [ECF 22]

5. The Debtor inadvertently  failed to identify a Plan payment in his first Chapter 13 Plan.

6. On June 06, 2024, the Chapter 13 Trustee filed a Motion to Dismiss the Case for failure to make Plan payments [ECF 31].

7. On June 18, 2024, the Chapter 13 Trustee also made objection to Confirmation of the Plan [ECF 36].

8. On July 08, 2024, the Debtor submitted a First Amended Chapter 13 Plan, proposing to make a Plan payment of $100.00 per month [ECF 39].

9. On July 10, 2024, the Creditor Bank of New York Mellon, f/k/a The Bank of New York Successor Indenture Trustee to JPMorgan Chase Bank, N.A. as Indenture Trustee on Behalf of the Noteholders of the CWHEQ, Inc. CWHEQ Revolving Home Equity Loan Trust Series 2005-F filed its Objection to Confirmation, C/O Bank of America ("BOA"). [ECF 42]

10. On April 23, 2024 (prior to the filing of the Debtor's Chapter 13 Petition), a foreclosure sale by public auction was held relative to the subject property, at which time a third party was the successful first high bidder with a purchase price of $1,050,000.00. A closing of said purchase never occurred, so therefore the requisite documents memorializing same were never recorded in the applicable Registry of Deeds, though an affidavit from the presiding auctioneer at said sale was recorded on May 13, 2024, in Suffolk County Registry of Deeds in Book 70164, Page 306.

11. The Debtor's Petition was filed prior to any recorded documents from the sale were recorded.

12. Subsequent to the Debtor's filing of his petition, the third party purchaser at the putative sale, declined to move forward with the sale.

13. Subsequent to the Debtor's filing of the Petition, the Debtor (through undersigned) reached out to BOA's counsel and inquired as to whether the sale could be rescinded, as the Debtor had located a buyer for the Property, and therefore the proceeds from the same would be used to pay this creditor 100% of its claim of $26,393.49.

14. BOA agreed to the Debtor's proposed sale but required to understand the terms of the transaction.

15. The Buyer is Janyuzak Almazbek uulu, of 42 Summer Street, West Roxbury, MA 02132 ("Buyer").

16. The Buyer learned of the possibility of the sale of the Property, and contacted the Debtor to relay a proposed offer to acquire the Property.

17. The Buyer has formally executed a Purchase and Sale Agreement ("P&S"), IN WHICH HE HAS PLACED A $5,000.00 Deposit [see P&S below].

Terms of Purchase

18. The agreed to purchase price for said Premises is **Two Hundred Forty Thousand and 00/100 ($240,000.00) Dollars, less the Deposit made by Buyer.**

19. In addition to the above consideration, the P&S at paragraph 30 states:

"The SELLER's obligations herein are expressly contingent on the Deed from the SELLER to the BUYER reserving a life estate in favor of the SELLER during which life estate SELLER shall remain in Unit #3 for no additional consideration and pursuant to the Use and Occupancy Agreement attached hereto and incorporated herein"

20. In addition to the above consideration, the P&S at paragraph 9 states:

"Full possession of Unit #2 of said Premises is to be delivered free of all occupants at the time of the delivery of the deed, said Premises to be then (a) in the same condition as they were at the time of Buyer's home inspection (except any repair/replacement items set forth in the Rider), reasonable use and wear thereof excepted, and (b) not in violation of said building and zoning laws, and (c) in compliance with provisions of any instrument referred to in Paragraph Four (4) hereof, and (d) in compliance and conformity with all other terms and provisions of this Agreement. The BUYER shall be entitled to inspect said Premises prior to the delivery of the deed in order to determine whether the condition thereof complies with the terms of this Agreement. Unit #1 shall be delivered subject to current at Will tenant and Unit #3 to be delivered occupied and subject to a life estate to be recited in the deed recorded at closing ."

21. The Proposed sale terms are reasonable and fair to Debtor where the proceeds from the sale will pay all creditors 100% of their claims

22. The Proposed sale terms are further reasonable where the Debtor will be able to maintain a residence with no housing cost, or related housing costs such as taxes, insurance and Property upkeep, etc., for the remainder of his life

23. The Debtor shall cause to be served this Motion and the Notice of Intended Sale electronically or by deposit with the U.S. Mail, upon (i) all entities known to have expressed an interest in a transaction with respect to the Properties during the bankruptcy case; (ii) all entities known to have asserted any lien, claim, interest or encumbrance in or upon the Properties; (iii) all federal, state, and local regulatory or taxing authorities or recording offices which have a reasonably known interest in the relief requested by the Motion; (iv) the U.S. Trustee; (v) the Massachusetts Department Of Revenue; (vi) the Internal Revenue Service; and (vii) all parties who have requested notice of all pleadings. The Trustee shall also cause to be served the Sale Notice **only** on all other known creditors and all equity security holders.

## APPLICABLE AUTHORITY

24. The proposed sale appears to be the best means for liquidating the Properties.

25. The Debtor realizes that the Buyer's Offer is significantly below the fair market value of the Property, however, the Debtor wishes to remain in the Property that he has occupied for many years, and has negotiated terms of the sale that will allow him to do so at no additional cost for the remainder of his days.

26. Even if the Debtor were to receive a higher offer, while he could possibly acquire a new property (something he does not want to do), however he would then have to take on associated costs of ownership of such Property, in which his limited income would most likely find him attempting to knock on the doors of this Court again in the future for relief.

27. The proposed sale will also benefit all creditors.

28. The proceeds from the proposed sale will also be used to pay the Chapter 13 Trustee's commission of $10,622.67.

29. Any allowed priority, administrative or general unsecured claim must be paid through the Chapter 13 Trustee and cannot be paid directly from the sale .

30. The Seller will not be using a Real Estate Broker, and all costs of closing will be borne by the Buyer.

31. The Closing Agent for the proposed sale will disperse the secured amount owed DIRECTLY to Federal Home Loan, and Bank of New York Mellon ("BOA").

32. For all of these reasons, the Trustee submits that the Sale is in the best interest of the Debtor and all Creditors because it pays all allowable claims, and expenses 100%, and allows the Debtor to be safe and secure in the knowledge that he will never lose the roof over his head during the remaining days of his life.

### CONCLUSION

**WHEREFORE,** the Trustee requests entry of a Sale Order in a substantially similar form to the proposed order submitted herewith, for authority to execute all documents necessary to complete the sale, upon consummation of the sale, for such other relief that is requested herein, and for such other relief as is just and proper. Dated this 2nd day of January 2025.

Attorney for the Debtor
/s/ Glenn F. Russell, Jr.
Glenn F. Russell, Jr.
BBO# 656914
38 Rock Street, Suite #12
Fall River, MA 02720
(888) 400-9318
russ45eq@gmail.com

## CERTIFICATE OF SERVICE

I, Glenn F. Russell, Jr., do hereby certify that on the 2ᵈ day of January 2025, I served the Debtors' Motion to Sell Property located at 26 Savin Hill Avenue, Dorchester, MA, to the following parties via electronic mail and submission to the ECF System, and/or by USPS postage prepaid to the following:.

***Assistant U.S. Trustee***
**John Fitzgerald**
Office of the US Trustee
J.W. McCormack Post Office & Courthouse
5 Post Office Sq., 10th Fl, Suite 1000
Boston, MA 02109

***Trustee***
Carolyn Bankowski
Ch 13-12 Trustee Boston
P. O. Box 8250
Boston, MA 02114
617-723-1313

**Boston Water and Sewer Commission**
P.O. Box 55466
Boston, MA 02205

**City of Boston Real Estate Tax**
CITY OF BOSTON, BOX 55808
Boston, MA 02205

**Discover Bank**
2479 Edison Blvd, Unity A
Twinsburg, OH 44087-234

**Fed Home Loan Mortgage Corp as Trustee**
Brian M. Kiser, Esq.
Marinosci Law Group, P.C.
275 West Natick Road
Suite 500
Warwick, RI 02886

**National Grid**
P.O. Box 371338
Pittsburgh, PA 15250-7338

**Specialized Loan Servicing, LLC**
Specialized Loan Servicing LLC
P.O. Box 636005
Littleton, CO 80163-6005

**The Bank of NY Mellon Indenture Trustee**
c/o Bank of America, N.A.
Marcus Pratt
Korde & Associates, P.C.
900 Chelmsford Street, Suite 3102
Lowell, MA 01851

/s/ *Glenn F. Russell, Jr.*
        Glenn F. Russell, Jr.

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

| | |
|---|---|
| **In Re:** ) | |
| ) | |
| **JOHN MALONE** ) | **Chapter 13** |
| ) | **Case No. 24-10885-CJP** |
| ) | |
| **Debtor** ) | |
| ) | |

**ORDER ON DEBTOR'S MOTION FOR ORDER APPROVING PRIVATE SALE OF**
**PROPERTY OF THE ESTATE FREE AND CLEAR OF ALL**
**LIENS AND ENCUMBRANCES**

**26 SAVIN HILL AVENUE, DORCHESTER MASSACHSETTS**

This matter having come before the Court upon the motion and notice of the Trustee's intent

to sell (the "Sale") property of the estates, free and clear of liens and encumbrances (Dkt No. ___,

the "Motion"), filed by John Malone (the "Debtor") specifically to sell the Debtor's right, title and

interest in real property described as 26 Savin Hill Avenue, in Dorchester, Massachusetts, , free and

clear of all liens, claims, mortgages, security interests, charges, encumbrances, and other interests,

to Janyuzak Almazbek uulu,  of 42 Summer Street, West Roxbury, MA 02132,,(the "Purchaser"); and a

hearing having been conducted on _____, 2025 (the "Sale Hearing"); and no objections or

higher bids having been timely made:

The Court finds that the Motion constitutes a core proceeding, pursuant to 28 U.S.C. §

157(b)(2)(N), and that it has jurisdiction over this matter pursuant to 28 U.S.C. § 1334. Venue of

this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409. The Court

further finds that the Sale is authorized under 11 U.S.C. § 363(b) and (f).

As evidenced by the certificate of service filed with the Court, and based on the

representations of counsel at the Sale Hearing, (i) proper, timely, adequate and sufficient notice of

the Motion and the Sale Hearing has been provided in accordance with §§ 102(1), 105, and 363 of

the Bankruptcy Code and Bankruptcy Rules 2002 and 6004; (ii) such notice was good and

sufficient, and appropriate under the particular circumstances; and (iii) no other or further notice of

the Motion and the Sale Hearing is or shall be required.

As demonstrated by (i) the evidence proffered or adduced at the Sale Hearing, (ii)

 the representations of counsel made at the Sale Hearing, the Debtor has established that the Sale

was proposed and entered into without collusion and with full disclosure, in good faith, and from

arm's-length bargaining positions. Neither the Debtor nor Purchaser have engaged in any conduct

that would cause or permit the Sale to be avoided under § 363(n) of the Bankruptcy Code.

The Purchaser is a good faith purchaser under Bankruptcy Code § 363(m) and, as such, are

entitled to all of the protections afforded thereby.

The consideration provided by Purchaser for the Premises pursuant to the Motion: (i) is fair

and reasonable, when taking into consideration the totality of the consideration offered by the

Buyer (ii) is the highest or otherwise best offer for the Premises, which will allow the Debtor to

remain in the Property for the remainder of his life without further housing costs (iii) will provide a

greater recovery for estate than would be provided by any other practical available alternative, and

(iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and

under the laws of the United States, any state, territory or possession.

Any holders of liens, claims and encumbrances on the Premises are adequately protected

by having their liens, claims, and encumbrances, if any, attach to the cash proceeds of the Sale.

The Debtor has demonstrated a good, sufficient, and sound business purpose and justification

and compelling circumstances for the Sale to the Purchaser. Approval of and consummation of the

Sale at this time are in the best interests of the Debtor, its creditors, its estate and other parties in

interest.

IT IS ORDERED that the Trustee's Motion shall be and hereby is granted, and the Debtor is hereby authorized to sell the estate's interest in the Premises to the Purchaser or its assignee for the sum of Two Hundred Forty Thousand and 00/100 Dollars ($240,000.00). The Motion and all of the terms and conditions thereof are hereby approved.

IT IS FURTHER ORDERED that the sale of the Premises to Purchaser shall be free and clear of all liens, claims and encumbrances, with valid liens, claims and encumbrances to attach to the Sale proceeds in their order of priority. Except as expressly permitted or otherwise specifically provided in the Motion or this order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax, and regulatory authorities, lenders, trade and other creditors, holding claims of any kind or nature whatsoever against or in the Debtors or the Premises (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors, the Premises, or the transfer of the Premises to Purchaser, hereby are forever barred, estopped, and permanently enjoined from asserting against Purchaser, its successors or assigns, their property, or the Premises, such persons' or entities' claims.

IT IS FURTHER ORDERED that any objections to the Motion that have not been withdrawn, waived, or settled, and all reservations of rights included therein, including any formal or informal objections raised or asserted hereby are overruled on the merits. Notice of the Motion and the Sale Hearing was fair and equitable under the circumstances and complied in all respects with the applicable federal and local rules.

IT IS FURTHER ORDERED that the commission earned by the Trustee in connection with the sale of the Premises, constitute reasonable and necessary expenses of preserving and disposing of the Premises and may be recovered from the proceeds of the sale, pursuant to 11 U.S.C. § 506(c), with allowance of such fees and expenses to be subject to further review and order by this Court.

IT IS FURTHER ORDERED that the Court shall retain jurisdiction to enforce and implement the provisions of this Order and protect Purchaser from any claims against the Debtors or the Premises or challenges to the sale, of any kind or nature whatsoever, with any such claims attaching to the proceeds of the Sale.

IT IS FURTHER ORDERED that the consideration provided by Purchaser for the Premises shall be deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory or possession. The consideration provided by Purchaser for the Premises is fair and reasonable, and the Sale may not be avoided under § 363(n) of the Bankruptcy Code.

IT IS FURTHER ORDERED that the stay under Federal Rule of Bankruptcy Procedure 6004(h) is waived.

Dated this ____th day of _____, 2025.


_____
CHRISTOPHER J. PANOS
Bankruptcy Judge

## PURCHASE AND SALE AGREEMENT
### (hereinafter referred to as the "Agreement")

**This 17th day of DECEMBER  2024**

| | | |
|---|---|---|
| 1. | PARTIES AND MAILING ADDRESSES | **John Malone** (hereinafter referred to as the "SELLER") agrees to sell and **Janyuzak Almazbek** (hereinafter referred to as the "BUYER") (SELLER and BUYER sometimes hereinafter collectively referred to as the "Parties"), agrees to buy, upon the terms hereinafter set forth, the following described premises: |
| 2. | DESCRIPTION | A certain parcel of land and the buildings and improvements thereon, known and numbered as **26 Savin Hill Avenue Boston Massachusetts,** as more particularly described in the deed recorded with Suffolk County Registry of Deeds in Book 12916, Page 283 (hereinafter referred to as the "Premises"). |
| 3. | BUILDINGS, STRUCTURES, IMPROVEMENTS, FIXTURES | Included in the sale as a part of the Premises are the buildings, structures, and improvements now thereon, and the fixtures used in connection therewith including, if any, all wall-to-wall carpeting, drapery rods, automatic garage door openers, venetian blinds, window shades, screens, screen doors, storm windows and doors, awnings, shutters, furnaces, heaters, heating equipment, stoves, ranges, oil and gas burners and fixtures appurtenant thereto, hot water heaters, plumbing and bathroom fixtures, garbage disposers, electric and other lighting fixtures, mantels, outside television antennas, fences, gates, trees, shrubs, plants, all fixtures and appliances in their current AS IS condition.<br><br>Specifically excluded from the sale are the following items: all SELLER's personal property.<br><br>*It is expressly understood that any items of personal property included with the sale are conveyed as a convenience to SELLER and for no additional consideration or attributed value* |
| 4. | TITLE DEED | Said Premises are to be conveyed by a good and sufficient quitclaim deed running to the BUYER, or to the nominee designated by the BUYER by written notice to the SELLER at least seven (7) days before the deed is to be delivered as herein provided, and said deed shall convey a good and clear record and marketable title thereto, free from encumbrances, except<br>(a)    Provisions of existing building and zoning laws but not in violation thereof;<br>(b)    Existing rights and obligations in party walls which are not the subject of written agreement<br>(c)    Such taxes for the then current year as are not due and payable on the date of the delivery and recording of  such deed;<br>(d)    Any liens for municipal betterments assessed after the date of this Closing;<br>(e)    Easements, restriction and reservations of record, if any, so long as the same do not prohibit or materially interfere with the current use of said Premises as a multi family dwelling. |
| 5. | PLANS | If said deed refers to a plan necessary to be recorded therewith the SELLER shall deliver such plan with the deed in form adequate for recording or registration. |
| 6. | REGISTERED TITLE | In addition to the foregoing, if the title to said Premises is registered, said deed shall be in form sufficient to entitle the BUYER to a Certificate of Title of said Premises, and the SELLER shall deliver with said deed all instruments, if any, necessary to enable the BUYER to obtain such Certificate of Title. |
| 7. | PURCHASE PRICE | The agreed to purchase price for said Premises is **Two Hundred Forty Thousand and 00/100 ($240,000.00) Dollars**, of which |

| | | |
|---|---|---|
| $ | 4,000.00 | having previously been paid to bind the "Offer to Purchase" |
| $. | 1,000.00 | have been paid as a deposit this day and |
| $ | 235,000.00 | are to be paid at the time of recording of the deed, by bank attorney's conveyancing, IOLTA or client's/trust account check(s) drawn on Mass Bank or wire transfer |
| $ | 240,000.00 | **TOTAL** |

8.   TIME FOR PERFORMANCE; DELIVERY OF DEED

Such deed is to be delivered at **10:00 AM on January 23, 2025 or within 14 days of bankruptcy court approval, whichever date occurs later**, at the office of counsel for BUYER's lender, unless otherwise agreed upon in writing. If the closing occurs at a location other than the Registry of Deeds, then the Seller shall not be charged by the closing attorney any type of courier fee to deliver the documents to the Registry for proper recordation.  Neither the SELLER, nor SELLER's agents or attorney shall be required to attend the Closing but do agree to facilitate the transaction and ensure that the Deed, Power of Attorney, and other customary documents are delivered to the closing attorney. It is agreed that time is of the essence of this Agreement.  Notwithstanding the foregoing, in the event SELLER fails to obtain Bankruptcy Court approval on or before April 23, 2025, BUYER shall have the option of terminating the Agreement with all deposits returned to BUYER and without further recourse to either party.

*As used in this Agreement, the words "time for performance," "closing" or "Closing" refer to the date, time, and place the deed is to be delivered to BUYER, as described in this clause, as the same may be extended per the terms of this Agreement or consent of the Parties.*

9.   POSSESSION AND CONDITION OF PREMISES

Full possession of Unit #2 of said Premises is to be delivered free of all occupants at the time of the delivery of the deed, said Premises to be then (a) in the same condition as they were at the time of Buyer's home inspection (except any repair/replacement items set forth in the Rider), reasonable use and wear thereof excepted, and (b) not in violation of said building and zoning laws, and (c) in compliance with provisions of any instrument referred to in Paragraph Four (4) hereof, and (d) in compliance and conformity with all other terms and provisions of this Agreement.  The BUYER shall be entitled to inspect said Premises prior to the delivery of the deed in order to determine whether the condition thereof complies with the terms of this Agreement.  Unit #1 shall be delivered subject to current at Will tenant and Unit #3 to be delivered occupied and subject to a life estate to be recited in the deed recorded at closing.

SELLER shall not be responsible for seasonal changes or for typical and natural losses to the grounds of the Premises including any loss of limbs and trees and other landscaping by natural causes, such as caused by storms, drought, flood, and the like, and water usage bans.

10.   EXTENSION TO PERFECT TITLE OR MAKE PREMISES CONFORM

If the SELLER shall be unable to give good title pursuant to Paragraph Four (4) above, or to deliver possession of the Premises, all as herein stipulated, or if at the time of the delivery of the deed the Premises do not conform with the provisions hereof, then the SELLER shall use reasonable efforts to remove any defects in title, or to deliver possession as provided herein, or to make the said Premises conform to the provisions hereof, as the case may be, in which event the SELLER shall give written notice thereof to the BUYER, and thereupon the time for performance hereof shall be until the first to occur of the following:  (a) the day before BUYER's mortgage and/or rate lock commitments expire, or (b) for a period of up to thirty (30) calendar days, as reasonably required by the SELLER to correct the defect.  **The Buyer and Seller expressly acknowledge and agree that the Seller shall not be required to expend or incur any additional expenses to make the title or the premises conform or to deliver the possession as agreed.** SELLER shall notify BUYER in writing once title has been cleared and the Parties shall close on a mutually acceptable day within a reasonable time thereafter.

11.   FAILURE TO PERFECT TITLE OR MAKE PREMISES CONFORM, etc.

If at the expiration of the extended time the SELLER shall have failed so to remove any defects in title, deliver possession, or make the Premises conform, as the case may be, all as herein agreed, or if at any time during the period of this Agreement or any extension thereof, the holder of a mortgage on said Premises shall refuse to permit the insurance proceeds, if any, to be used for such purposes, then any payments made under this Agreement shall be forthwith refunded and all other obligations of the Parties hereto shall cease and this Agreement shall be void without recourse to the Parties hereto.

12.   BUYER's ELECTION TO ACCEPT TITLE

The BUYER shall have the election, at either the original or any extended time for performance, to accept such title as the SELLER can deliver to the said Premises in their then condition and to pay therefore the purchase price without deduction, in which case the SELLER shall convey such title, except that in the event of such conveyance in accord with the provisions of this Paragraph, if the said Premises shall have been damaged by fire, vandalism or other casualty, or in the event of a taking of all or a part of the Premises by eminent domain, then at BUYER's option, all payments made under this Agreement shall be refunded and all other obligations of the Parties hereto shall cease and this Agreement shall be void without recourse to either Party.

| | | |
|---|---|---|
| 13. | ACCEPTANCE OF DEED | The acceptance and recording of a deed by the BUYER or his nominee as the case may be, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the delivery of said deed. |
| 14. | USE OF MONEY TO CLEAR TITLE | To enable the SELLER to make conveyance as herein provided, the SELLER may, at the time of delivery of the deed, use the purchase money or any portion thereof to clear the title of any or all encumbrances or interests, provided that all instruments so procured are recorded simultaneously with the delivery of the deed, or in the case of mortgages granted by the SELLER to institutional lenders which are paid in full from the sale proceeds, within a reasonable time after the delivery of said deed in accordance with local conveyancing practices. |

15. INSURANCE

Until the delivery of the deed, the SELLER shall maintain insurance on said Premises as follows:

| Type of Insurance | Amount of Coverage |
|---|---|
| (a) Fire and Extended Coverage | *$   as presently insured |
| (b) | |

*All **risk of loss** in the event of damage to the premises shall remain with SELLER until the earlier of the recording of the deed or the disbursement of funds under a GAP Title Insurance Policy.*

| | | |
|---|---|---|
| 16. | ADJUSTMENTS | Water and sewer use charges and real estate taxes for the fiscal year in which the closing takes place, shall be apportioned and fuel value shall be adjusted, as of the day of performance of this Agreement and the net amount thereof shall be added to or deducted from, as the case may be, the purchase price payable by the BUYER at the time of delivery of the deed.  SELLER shall obtain and bring to the closing a final water/sewer bill or reading for said apportionment/adjustment, or in the alternative, shall bring same to the closing along with evidence of payment of same.   In the event any apportionment/adjustment pursuant to this Paragraph are, subsequent to the closing, found to be erroneous, then either Party hereto who is entitled to additional monies shall invoice (along with reasonably detailed back-up data) the other Party for such additional amounts as may be owing, and such amounts shall be paid, with good funds, within ten (10) days from the date of the invoice. This provision shall survive the delivery of the deed hereunder. |
| | | **TRANSFER TAX PAID BY SELLERS**. Sellers of properties in Massachusetts are required to pay a transfer tax at the rate of $4.56/$1,000 of sale price, except in Barnstable County [$6.48] which may be rounded upwards. Based on the current sale price and tax rates, the transfer tax (which will be deducted from SELLER's proceeds at the time of sale) is approximately **$1094.40** |
| 17. | ADJUSTMENT OF UNASSESSED AND ABATED TAXES | If the amount of said taxes is not known at the time of the delivery of the deed, they shall be apportioned on the basis of the taxes assessed for the preceding fiscal year, with a reapportionment as soon as the new tax rate and valuation can be ascertained; and, if the taxes which are to be apportioned shall thereafter be reduced by abatement, the amount of such abatement, less the reasonable cost of obtaining the same, shall be apportioned between the Parties, provided that neither party shall be obligated to institute or prosecute proceedings for an abatement unless herein otherwise agreed. |
| 18. | BROKER's FEE | N/A |
| 19. | BROKER(S) WARRANTY | N/A |
| 20. | DEPOSIT | All deposits made hereunder shall be held in escrow by **Statera Law** LLC (as escrow agent subject to the terms of this Agreement and shall be duly accounted for at the time for performance of this Agreement.  In the event of any disagreement between the Parties, the escrow agent shall retain all deposits made under this Agreement pending instructions mutually given by the SELLER and the BUYER, their respective counsel, or a court of competent jurisdiction. The delivery, acceptance and recording of the Deed shall in all cases constitute the Parties' joint authorization for the release of all deposits held hereunder to the SELLER or Broker(s) in accordance with the disbursements outlined on a HUD Settlement Statement or similar closing statement executed by the Parties. |
| 21. | BUYER's DEFAULT; | If the BUYER shall fail to fulfill the BUYER's agreements herein, and SELLER has fulfilled SELLER's |

| | DAMAGES | agreements herein, all deposits made hereunder by the BUYER shall be retained by the SELLER as liquidated damages and this shall be SELLER's sole and exclusive remedy at both law and in equity for any default by BUYER hereunder. |
|---|---|---|
| 22. | RELEASE BY HUSBAND OR WIFE | The SELLER's spouse hereby agrees to join in said deed and to release and convey all statutory and other rights and interests in said Premises. |
| 23. | BROKER AS PARTY | N/A |
| 24. | LIABILITY OF TRUSTEE, SHAREHOLDER, BENEFICIARY, etc. | If the SELLER or BUYER executes this Agreement in a representative or fiduciary capacity, only the principal or the estate represented shall be bound, and neither the SELLER or BUYER so executing, nor any shareholder or beneficiary of any trust, shall be personally liable for any obligation, express or implied, hereunder. |
| 25. | WARRANTIES AND REPRESENTATIONS | The BUYER acknowledges that the BUYER has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth or incorporated in this Agreement or previously made in writing, except for the following additional warranties and representations, if any, made by either the SELLER or the Broker(s): **NONE**. |

As used throughout this Agreement, "as is" means the condition the premises, with all defects and faults, known and unknown to BUYER, existing at the time of Buyer's offer to purchase of the premises (defined in Clause 9), reasonable wear and tear excepted.

 SELLER expressly disclaims any statement, communication, representation, or warranty, express or implied, including but not limited the legal use or compliance of the premises with any law, ordinance, by-law, regulation, or code, made by SELLER, any representative or agent of SELLER, and any other person concerning the premises. The provisions of this clause shall survive the delivery of the deed, or the expiration or termination of this Agreement, as the case may be.

| 26. | MORTGAGE CONTINGENCY CLAUSE | N/A |
|---|---|---|
| 27. | CONSTRUCTION OF AGREEMENT | This Agreement, executed in multiple counterparts, is to be construed as a Massachusetts contract, is to take effect as a sealed instrument, sets forth the entire contract between the Parties, is binding upon and ensures to the benefit of the Parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be canceled, modified or amended only by a written instrument executed by both the SELLER and the BUYER or their respective counsels. The Parties may rely upon facsimile copies of such written instruments.  If two or more persons are named herein as BUYER and/or SELLER, their respective obligations hereunder shall be joint and several.  The captions and marginal notes are used only as a matter of convenience and are not to be considered a part of this Agreement or to be used in determining the intent of the Parties to it. |
| 28. | LEAD PAINT LAW | The Parties acknowledge that, under Massachusetts law, whenever a child or children under six years of age resides in any residential premises in which any paint, plaster or other accessible material contains dangerous levels of lead, the owner of said premises must remove or cover said paint, plaster or other material so as to make it inaccessible to children under six years of age. |
| 29. | SMOKE AND CARBON MONOXIDE DETECTORS | Buyer shall, at the Closing, either obtain a waiver or deliver a certificate from the fire department of the city or town in which the Premises are located stating that the Premises have been equipped with approved smoke detectors and carbon monoxide detectors in conformity with applicable law. Buyer agrees to indemnify Seller if Buyer does not fulfill its obligations under this Section 25 prior to and at Closing. This Section 25 shall survive the Closing. |
| 30. | ADDITIONAL PROVISIONS | The SELLER's obligations herein are expressly contingent on the Deed from the SELLER to the BUYER reserving a life estate in favor of the SELLER during which life estate SELLER shall remain in Unit #3 for no additional consideration and pursuant to the Use and Occupancy Agreement attached hereto and incorporated herein. |

This agreement is subject to written approval of the bankruptcy court and the seller's acceptance of said terms.

Buyer and Seller expressly acknowledge and agree that the SELLER shall not be required to provide estoppel letters but will agree to assign the right to collect and rents from Unit #2, if any, to the BUYER at closing.

BUYER and SELLER further acknowledge and agree that BUYER shall obtain at their own cost and expense the final water reading. SELLER agrees to pay the final water bill at or prior to closing.

The executed "Riders A", attached hereto, are incorporated herein by reference.  If any provision in the Rider or Addendum conflicts in any way with any other provision in Paragraphs One (1) through Thirty (30), inclusive, of this Agreement or with any addenda or exhibits hereto, the provision contained in the Rider or Addendum shall control.

FOR RESIDENTIAL PROPERTY CONSTRUCTED PRIOR TO 1978, BUYER MUST ALL HAVE SIGNED LEAD PAINT "PROPERTY TRANSFER NOTIFICATION CERTIFICATION"

**NOTICE:  THIS IS A LEGAL DOCUMENT THAT CREATES BINDING OBLIGATIONS.  IF NOT UNDERSTOOD, CONSULT AN ATTORNEY.**

By signing below, each of the parties certifies that he or she has completely read this Agreement, is fully satisfied with its terms, and has been represented by counsel of his or her choosing in the negotiation of this Agreement or has intentionally waived such right of representation.

Signed under seal as of the date first shown above.

SELLER: *John William Malone 12/17/24*                         SELLER: _____

BUYER: *Janyuzak Almazbek*                         BUYER: _____

*12/17/24*

# RIDER A

31.  All notices required or to be given hereunder shall be in writing and deemed duly given when placed in the US Mail, postage prepaid, or sent via facsimile, or e-mail, or delivered addressed as follows:

If to SELLER:
Andrew N. Coppo, Esq.
Greater Boston Title & Escrow, LLC
60 Adams Street #207 Milton, MA 02186
T 617-264-0376
F 844-428-4853
andrew@closingattorneyboston.com


and
If to BUYER:

Kyle D. Smith, Esq.
Statera Law LLC
181 Wells Avenue, Suite 104
Newton, MA 02459
T (617) 697-9708
F (781) 644-6151
kyle@stateralaw.com


or to such other address or addresses as may from time to time be designated by either party by written notice to the other.

32.  Any title matter or practice arising under or relating to this Agreement which is the subject of a title standard or practice standard of the REBA shall be governed by said title standard or practice standard to the extent applicable and to the extent such title standard or practice standard does not contradict any expressed term or condition of this Agreement.

33.  BUYER warrants and represents to SELLER and SELLER represents and warrants to BUYER that it has dealt with no broker or other person entitled to a broker's commission in connection with the negotiation or execution of this Agreement or the consummation of the transaction contemplated hereby and each agrees to hold the other harmless and indemnify the other against all damages, claims, losses and liabilities, including legal fees, incurred by the other, arising out of or resulting from the failure of its representation and warranty.  This provision shall survive the closing hereunder.  Seller represents that there are no outstanding rights of first refusal or option to purchase the property.

34.  All deposits referred to in Paragraph Twenty (20) are to be held in an FDIC insured (non-interest-bearing) account.

35.  SELLER shall execute and deliver simultaneously with the delivery of the deed, and when required shall on oath swear to the truth of the matters therein set forth, such documents as may reasonably be required by BUYER's lender or BUYER's attorney, including without limiting the generality of the foregoing, certifications, or affidavits with respect to:  (a) persons or parties in possession of the Premises;  (b) facts or conditions which may give rise to mechanic's or materialmen's liens;  (c) an affidavit pursuant to Section 1445 of the Internal Revenue Code;  (d) the true purchase price of the Premises and whether the SELLER has or intends to lend to the BUYER a portion thereof;  (e) urea formaldehyde foam insulation ("UFFI") Disclosure Affidavit stating there is no UFFI; and (f) 1099 reporting form. Seller shall not be required to indemnify, defend, or hold harmless Buyer, any Title Insurance Company or any other person, in any such closing document.

36. To the best of SELLER's knowledge, as of the date hereof, the SELLER has received no notice from any municipal, county, state or federal agency asserting or alleging that the Premises are or may be in violation of the provisions of any municipal, county, state or federal codes, ordinances, statutes or regulations relating to zoning, building, environmental or health matters. The SELLER shall make a similar representation as of the closing date. SELLER will promptly notify BUYER of any material change in facts which arise prior to the Closing which would make such representation untrue if such state of facts had existed on the date of execution of this Agreement.

37. The acceptance of the Deed by buyer on the Closing Date shall be deemed full performance and discharge of each and every agreement and obligation on the part of Seller hereunder to be performed. Any and all representations and warranties of Seller contained in this Agreement shall not survive the Closing Date and the delivery of the Deed, and shall be merged in the delivery of the Deed, unless otherwise expressly and specifically provided in the Agreement.

38. Both BUYER and SELLER hereby acknowledge that they have been offered the opportunity to seek and confer with qualified legal counsel of their choice prior to signing this Agreement.

39. Seller shall not be liable or bound in any way for any verbal or written statement, real estate broker or agent or employee of Seller, or any other person. It is understood and agreed that all prior and contemporaneous representations, statements, understandings and agreements, oral or written, between the parties merged in this Agreement, which alone fully and completely expresses their agreement, and that the same is entered into after full investigation, neither party relying on any statement or representation not embodied in this Agreement made by the other. This provision shall survive the closing hereunder.

40. BUYER warrants, represents and acknowledges to SELLER and agrees that SELLER is relying upon the following:  By execution of this Agreement, BUYER acknowledges that BUYER has been provided ample opportunity to conduct any and all inspections of the Premises (either independently or through agents of the BUYER's choice), including all improvements thereon, and any and all component parts thereof, desired by the BUYER (and that the SELLER has no responsibility for any failure by the BUYER to fully exercise such inspection rights), including, without limitation, mechanical, structural, groundwater tables, utility systems, all appliances and personal property being conveyed with the Premises as provided in this Agreement, pest, termite, lead paint, asbestos, radon, mold and any hazardous chemicals, materials, or substances, dimensions and area of the Premises, and that BUYER is fully satisfied with the results of same, and accepts the Premises "AS IS" (as of the time of BUYER's inspection), reasonable use and wear thereof excepted, and is not relying upon any representations of the SELLER or SELLER's agents in connection with same and in connection with BUYER's decision to purchase the Premises (other than those specifically set forth in this Agreement), including, without limitation, as to the character, quality, use, value, quantity or condition of the Premises except as expressly set forth herein.  BUYER further represents and agrees that the existence of any matter or condition revealed by, or which could have been revealed by, such inspections shall not be deemed to be a default by SELLER under this Agreement.  Any statements which may have previously been made by the SELLER, including without limitation in any realtor's/broker's questionnaire or so-called "Seller's Disclosure Statement" or property listing information, if any, are specifically hereby voided and are superseded by this Agreement. BUYER acknowledges and agrees that SELLER shall have no obligation to repair any defect existing on the date of this Agreement. Without intending to limit the generality of the foregoing, SELLER does not warrant or represent that the Premises comply with current municipal, county, state or federal codes, ordinances, statutes, laws, regulations or the like, relating to zoning, building, environmental, health or any involving the maintenance, operation or condition of the Premises.  BUYER hereby agrees that SELLER shall have no responsibility or liability for complying with any codes, ordinances, statutes, laws, regulations or the like which relate to lead paint, asbestos, radon, mold, hazardous chemicals, materials, or substances or any requirements that SELLER remove any or all of the same, BUYER hereby assuming any and all such responsibility and liability.  SELLER makes no representations concerning the accuracy of any information provided by the realtor(s) or broker(s) unless expressly incorporated into this Agreement.  The provisions of this paragraph shall survive the Closing and delivery of the Deed hereunder.

41. BUYER acknowledges that the SELLER and the Brokers, if any, have complied with the requirements of Massachusetts General Laws Chapter 111, as amended, relative to the possible presence of lead paint in the Premises, including the provisions of Section 197A of Chapter 111. BUYERS acknowledge having been verbally informed of the possible presence of dangerous levels of lead in the Premises and of the provisions of the Lead Paint Statute, so called (M.G.L. Chapter 111, Sections 190 - 199A), and the regulations promulgated thereunder, and acknowledge receipt from SELLER and/or SELLER's agents, of a Commonwealth of Massachusetts, Department of Health Property Transfer Notification Certification, and further acknowledges being informed by SELLER and/or SELLER's agents about the availability of inspections for dangerous levels of lead.  BUYER further acknowledges that SELLER has allowed BUYER ten (10) days to conduct inspections to determine whether lead is present on the Premises.  BUYER hereby releases SELLER, and SELLER's agents, from liability for any damages, cost or expenses BUYER incurs as a result of the presence of lead in the Premises or in the soil surrounding the Premises.  A copy of the Property Transfer Notification Certification signed by the BUYER at the time of the Offer.  The terms of said Certification shall survive the delivery of the Deed hereunder.  The provisions of this Paragraph shall survive delivery of the Deed hereunder.

42. By executing this Agreement, the Buyer and Seller hereby grant to their attorneys, the actual authority to bind them for the sole limited purpose of allowing them to grant extensions, and the Seller and the Buyer shall be able to rely upon signatures of said

attorneys as binding unless they have actual knowledge that the principals have disclaimed the authority granted herein to bind them. Further, for purposes of this Agreement, facsimile signatures shall be binding.

42.  If the BUYER shall record this agreement in the Registry of Deeds or assigns his/her rights under this agreement to another (however this limitation of assignment shall not be read to impinge on or prohibit BUYER's right to designate a nominee under Paragraph 4 of this agreement), then, at the option of the SELLER, BUYER shall be deemed to be in default under this agreement and the SELLER's obligations under this agreement shall be at an end.

44.  In the case of institutional mortgage payoffs being disbursed by the buyers closing attorney, in no event shall the seller be charged in excess of $35.00 for overnight courier fees total. Further, the closing attorney shall not collect in excess of five (5) days mortgage interest per diem with respect to REBA practice standard no. 17, the closing attorney shall be entitled to charge no more than $105.00 per mortgage to obtain releases of said mortgage(s). Should the payoff provided by Seller include wire instructions, the closing attorney will send the proceeds for the payoff using those wire instructions and will not charge the Seller for this wire. Lastly, in the event the seller chooses to have their proceeds wired, the closing attorney shall be entitled to charge a reasonable wire fee, not in excess of $50.00.

45.  The Seller expressly acknowledges that the Seller's counsel has not made any representations about the tax consequences of this transaction. The Seller has been advised by their attorney that the sale of premises may have tax consequence and to seek the advice of independent tax counsel. The Seller acknowledges that they have had the opportunity to seek the advice of independent tax counsel prior to signing this Agreement and agree to indemnify and hold harmless Andrew N. Coppo, Esq. from any and all tax liability regarding the sale of the Premises.

46.  Notwithstanding anything contained herein to the contrary this Agreement shall not in any way be contingent on the sale or refinance of any of the BUYER'S real estate and any mortgage rejection based upon BUYER'S inability to sell or refinance his/her/their real estate shall not be a sufficient cause for the BUYER to terminate this Agreement under the Mortgage Contingency Clause and/or under this Purchase and Sale Agreement

47.  All of SELLER's representations under this Agreement are to the SELLER's actual knowledge, and without conducting any independent investigation or inquiry and are not intended to imply or create any obligation for the SELLER to take additional actions or more further inquiry with regard to any topics contained within this Agreement or elsewhere, including but not limited to, documents, to be executed in conjunction with the Closing; furthermore, it is acknowledged and agreed by the Parties that any such representations shall not constitute a representation or warranty against the existence of such conditions about which SELLER has no knowledge, nor a representation or warranty against the discovery or occurrence of such conditions. Any representations and warranties made by the Seller shall terminate upon the recording of the deed. The provisions of this paragraph shall survive the Closing and delivery of the Deed hereunder.

48.  The submission of a draft of this Agreement or summary of some or all of its provisions does not constitute an offer to sell or acceptance of an offer to buy the within Premises. It is understood and agreed that neither the BUYER nor the SELLER shall be legally obligated with respect to the purchase and sale of the within Premises unless or until this Agreement has been executed by both the BUYER and the SELLER and a fully executed copy thereof has been delivered to both Parties.

49.  This Agreement supersedes all prior agreements and other understandings between the parties and represents the complete and full agreement of the parties hereto except as this Agreement is modified or altered by written agreement signed by the parties hereto. All prior offers and agreements between the parties with respect to the transaction contemplated hereby shall be null and void.

50.  Both BUYER and SELLER hereby acknowledge that they have been offered the opportunity to seek and confer with qualified legal counsel of their choice prior to signing this Agreement. It is also acknowledged and presumed that the substance and form of this Agreement have been fully reviewed by the Parties hereto and approved as to form by their respective counsel. It is further acknowledged and agreed that no presumption shall exist against either party hereto by virtue of this Agreement being considered to have been drafted by counsel for either party thereto.

51.  SELLER agrees that it shall be a condition to the closing hereunder that title to the property shall be insurable, for the benefit of the BUYER by a title insurance company in a fee owner's title insurance policy, at normal applicable premium rates, in the American Land Title Association form currently in use, subject only to printed exceptions normally included in said policy, and matters described in Paragraph 4 of this Agreement. It is furthermore agreed that in the event of a title matter for which a title insurance company is willing to issue a so-called "clean" policy or provide "affirmative coverage" over a known defect or problem, BUYER may elect to accept same but shall not be required to do so, and shall have the right, at the option of their counsel, to deem title to the premises unacceptable or unmarketable and to terminate this Agreement.

53.  The Parties hereto also agree to execute and deliver to the requesting party whatever additional documents or amendments to existing documents are reasonably required to effectuate the sale and purchase under this Agreement provided such

additional documents or amendments are prepared by the requesting party and do not in any way adversely affect, or otherwise enlarge the liability of, any of the parties relative to said sale and purchase.

56.   In the event that SELLER is a natural person SELLER shall execute the Deed personally.  At the sole option of the BUYER, a Deed executed for the SELLER pursuant to a power of attorney shall not satisfy the title requirements of the Agreement.

57.   SELLER warrants and represents that SELLER is not a "*foreign person*" as defined in Section 1445 of the Internal Revenue Code of 1986, as amended("I.R.C."), and agrees to deliver to BUYER, at or before the Closing, an executed "non-foreign" affidavit in compliance with I.R.C. Section 1445(b)(2) and the regulations thereunder, evidencing the foregoing warranty and representation.  If the SELLER does not or cannot provide such an affidavit or a "qualifying statement" issued by the Secretary of the Treasury in accordance with I.R.C. Section 1445(b)(4)(B) exempting the transaction from withholding, the "Closing Agent" for this transaction will be entitled to make withholdings in accordance with said Section 1445 on account of taxes which may be payable by the SELLER on account of the sale of the Premises.  The Parties acknowledge and agree that the "Closing Agent" will be the person responsible for performing the Closing of this transaction, and, hence, for the appropriate filing of any documents and subject withholding with the Internal Revenue Service.  In required, Closing Agent shall withhold fifteen percent (15%) of the purchase price (if after February 2016) as contemplated herein and forward this amount to the Internal Revenue Service ("IRS").  Such withholding may not be required if SELLER obtains and provides the Closing Agent with an authorized exemption or waiver from withholding.  If SELLER does not provide Closing Agent with a certificate of exemption of waiver from FIRPTA within fourteen (14) calendar days prior to Closing, Closing Agent shall withhold the required amount and forward it to the IRS.  SELLER agrees to fully cooperate with the Closing Agent, as a condition of closing, and provide all such information as may be necessary to file all appropriate documents with the IRS.  SELLER hereby further agrees that in the event the SELLER does not provide the Closing Agent with confirmation of SELLER having engaged a Certified Public Accountant and provide the Closing Agent contact information for same, the Closing Agent shall charge the SELLER $500.00 as an additional line item on the proposed Settlement Statement or Closing Disclosure to act as the Closing Agent and process the IRS documents. SELLER does hereby forever release and discharge BUYER, BUYER'S attorney and the Closing Agent from all liability resulting from, or arising out of, BUYER'S, BUYER'S attorney's or the Closing Agent's good faith compliance with the requirements of Section 1445 the I.R.C.  The provisions of this Paragraph shall survive delivery of the Deed hereunder.

58.   Without limitation of any other provisions of this Agreement, said Premises shall not be considered to be in compliance with the provisions of this Agreement with respect to title unless:

(a)   All buildings, structures and improvements on the Premises, including, but not limited to, any driveway(s), garage(s), fence(s), shed(s) and all other improvements intended to be included in the sale and all means of access to and egress from the Premises shall be wholly within the lot lines of the Premises and shall not encroach upon, over or under any property not within such lot lines or property of any other person or entity;

(b)   No building, structure, improvement, including, but not limited to, any driveway(s), garage(s), fence(s), shed(s), way(s) or property of any kind encroaches upon, over or under the Premises from other premises;

(c)   Title to the Premises is insurable, for the benefit of the BUYER, by a title insurance company reasonably acceptable to BUYER, in a fee owner's policy of title insurance, at normal premium rates, on the American Land Title Association form currently in use, subject only to the exceptions permitted under Paragraph Four (4) of this Agreement and those printed exceptions to title normally included in the "jacket" to such form or policy;

(b)   The Premises abut and have vehicular and pedestrian access to a public way, duly laid out or accepted as such by the town or city in which the Premises are located and the Premises and all buildings and improvements thereon have unrestricted and unencumbered vehicular and pedestrian access to such public way;

(c)   The Premises is equipped with all necessary utilities, including, without limitation, electric, water, public sewer or private legally conforming on-site subsurface wastewater disposal system, telephone, natural gas and cable;

(f)   All existing utilities servicing the Premises are provided directly from a public street or private way, or via validly recorded easement with perpetual right of use; and

(g)   The Premises are not located within a so-called "Flood Plain Area" or "Flood Plain Zone" or any other such flood-prone area as determined under the rules and procedures of the Federal Flood Plain Insurance Program which would require BUYER to purchase flood insurance; and

(h)   Certificates of Compliance for any lot specific outstanding Orders of Conditions pertaining to wetlands have been recorded or delivered for recording at closing;

(i)     BUYER's survey or plot plan indicates that no structure or improvements situated upon the Premises violates said zoning ordinances or by-laws or provisions of M.G.L. chapter 40A, unless such structures or improvements are validly nonconforming in accordance with said ordinances, by-laws and general laws;

59.     The SELLER warrants and represents to the best of SELLER's knowledge and belief that the following information is true and accurate as of the date of this Agreement and shall remain true and accurate as of the date of Closing:

(a)     SELLER has complete and unencumbered ownership of all fixtures, fittings and equipment located in the Premises;

(b)     as of the date hereof, the SELLER has no knowledge of nor has received any written notice from any municipal, county, state or federal agency asserting or alleging that the Premises are may be in violation of the provisions of any municipal, county, state or federal codes, ordinances, statutes or regulations relating to zoning, building, environmental or health matters or enforcement proceedings;

(c)     SELLER represents that SELLER has no knowledge of any municipal betterments affecting the Premises approved, pending, proposed or contemplated by the City of Boston, MA which is likely to result in an assessment against the Premises;

(d)     SELLER shall be responsible for the full amount of any assessments prior to Closing whether or not such assessments may be paid, in whole or in part, after the Closing;

(e)     other than reasonable quantities of normal household products, there has been no release of any toxic or hazardous substances (as same is contemplated by MGL Ch 21E) and no such toxic or hazardous substances have been used, released, generated, stored, treated, disposed of, or otherwise deposited, in, on, about or from the Premises, including without limitation oil, asbestos and/or chlordane;

(f)     there are no underground oil storage tanks or related apparatus (including piping) for fuel oil, waste oil and no articles or substances on the Premises which are toxic or hazardous as same is contemplated by MGL Ch 21E. located on or under the Premises and the SELLER has not removed such tanks or apparatus from the Premises during Seller's ownership term and has no knowledge of any releases into the soil from any such tanks or apparatus during Seller's ownership term;

(g)     SELLER represents that the Premises are not served by a septic system, but rather, is connected to, and served by, municipal water and sewer and SELLER has received no notice of any deficiency or violation with respect to the sanitary sewer or storm-water drainage system, water supply or utilities servicing and used in connection with the Premises.

Except as otherwise herein provided, the representations and warranties contained in this Agreement refer to the date of execution of this Agreement and shall survive the delivery and recording of the Deed. SELLER will promptly notify BUYER of any change in facts, which SELLER becomes aware of, which arise prior to the Closing which would make any such representation or warranty untrue if such state of facts had existed on the date of execution of this Agreement ("SELLER Notice") and unless SELLER shall rectify the cause of such change by the original or extended time for Closing hereunder, BUYER shall have the option of canceling this Agreement by notifying the SELLER thereof in writing in which event all deposits made by the BUYER hereunder, together with the accrued interest, shall be forthwith refunded to BUYER and this Agreement shall be null and void and without recourse to the Parties hereto.

60.     This Agreement, and every term, condition and provision hereof, shall be governed and controlled by mutual, reciprocal and objective covenants of good faith and fair dealings.

61.     Notwithstanding anything in this Agreement to the contrary, in the event the said Premises shall have been damaged by fire, vandalism or other casualty insured against or not, in an amount in excess of $5,000.00, or in the event of a taking of all or part of the Premises by eminent domain, BUYER shall have the option of revoking this Agreement by written notice to the SELLER, whereupon all deposits made by the BUYER shall be forthwith refunded and this Agreement shall become null and void and without further recourse to either party.

62.     If this Agreement or any other provisions by way of reference incorporated herein shall contain any term or provision which shall be invalid, then the remainder of the Agreement or other instrument by way of reference incorporated herein, as the case may be, shall not be affected thereby and shall remain valid and in full force and effect to the fullest extent permitted by law.

**NOTICE:  THIS IS A LEGAL DOCUMENT THAT CREATES BINDING OBLIGATIONS.  IF NOT UNDERSTOOD, CONSULT AN ATTORNEY.**

*By signing below, each of the undersigned certifies that they have fully read this Agreement, is completely satisfied with its terms, conditions, and content, has been represented by counsel of their choosing in the negotiation and explanation of this Agreement (or has intentionally and consciously waived such right of representation), and acknowledges that the other party is relying on this certification in entering into this Agreement for the purchase and sale of the premises.*

Signed under seal as of the date first shown above.

SELLER: _John W. Matora_                                  SELLER: _____
         12/17/14

BUYER: _Janyzak Almazbek_                                 BUYER: _____
        12/17/24

*OLF 2A (Official Local Form 2A)*

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

In re  JOHN MALONE

Chapter   13

Case No.  24-10885

Debtor

## NOTICE OF INTENDED PRIVATE SALE OF PROPERTY,
## SOLICITATION OF COUNTEROFFERS,
## DEADLINE FOR SUBMITTING OBJECTIONS AND HIGHER OFFERS
## AND HEARING DATE

01/23/2025 or By Order of Court

**IS THE DATE OF THE PROPOSED SALE**

01/16/2025

**IS THE DATE BY WHICH OBJECTIONS OR COUNTEROFFERS MUST BE MADE**

**NOTICE IS HEREBY GIVEN,** pursuant to 11 U.S.C. § 363, Fed. R. Bankr. P. 2002(a)(2) and 6004, and MLBR 2002-5 and 6004-1, that the trustee (or, where applicable, the debtor), intends to sell at private sale the debtor's right, title and interest in certain property of the estate.

**PROPERTY TO BE SOLD:**

(General description)

26 Savin Hill Avenue Dorchester, MA ("Property")

An itemized list of the property to be sold is attached to this Notice.

**THE OFFER:**

$240,000.00, and in addition, the buyer agreeing to grant use and occupancy of 26 Savin Hill Avenue Dorchester, MA to Mr. Malone for the duration of his life at no cost.

The trustee (or where applicable, the debtor) has received an offer to purchase the property for the sum of Two-Hundred Forty Dollars & use and occupancy ($ $240,000.00 ) in cash (or state other consideration).

**THE PROPOSED BUYER:**

The proposed buyer is Janyuzak Almazbek uulu,  of 42 Summer Street, West Roxbury, MA 02132 .  The relationship of
(Name and address).

the proposed buyer to the debtor (or trustee, if applicable) is: Proposed Purchaser

**THE SALE DATE:**

The sale shall take place on or before January 23, 2025, or under Order of the Court .  The proposed buyer has paid a deposit in the sum of $ 5,000.00_____.  The terms of the proposed sale are more particularly described in a Motion for Order Authorizing and Approving Private Sale of Property of the Estate (the "Motion to Approve Sale") filed with the Court on 01/02/2025_____ and a written purchase and sale agreement dated 12/17/2024_____.  The Motion to Approve Sale and the purchase and sale agreement are available at no charge upon request from the undersigned.

**SALE FREE AND CLEAR OF LIENS:**

The Property_____ will be sold free and clear of all liens, claims and encumbrances. Any perfected, enforceable valid liens shall attach to the proceeds of the sale according to priorities established under applicable law.

**COUNTEROFFERS OR OBJECTIONS:**

Any objections to the sale and/or higher offers must be filed in writing with the Clerk, United States Bankruptcy Court at Boston_____ (Boston, Springfield or Worcester address as applicable) on or before January 16, 2025_____ at 4:30 PM (the "Objection Deadline").  A copy of any objection or higher offer also shall be served upon the undersigned.   Any objection to the sale must state with particularity the grounds for the objection and why the intended sale should not be authorized.  Any objection to the sale shall be governed by Fed. R. Bankr. P. 9014.

Through this Notice, higher offers for the Property are hereby solicited.  Any higher offer must be accompanied by a cash deposit of $ 5,000.00_____ in the form of a certified or bank check made payable to the undersigned.  Higher offers must be on the same terms and conditions provided in the Purchase and Sale Agreement, other than the purchase price.

**HEARING:**

A hearing on the Motion to Approve Sale, objections or higher offers is scheduled to take place on 01/29/2025_____ at 1:30___ AM/PM before the Honorable Panos, J._____, United States Bankruptcy Judge, Courtroom _____, by Zoom_____, Boston_____, Massachusetts.  Any party who has filed an objection or higher offer is expected to be present at the hearing, failing which the objection may be overruled or the

higher offer stricken.  The Court may take evidence at any hearing on approval of the sale to resolve issues of fact.  If no objection to the Motion to Approve Sale or higher offer is timely filed, the Court, in its discretion, may cancel the scheduled hearing and approve the sale without a hearing.

At the hearing on the sale the Court may 1) consider any requests to strike a higher offer, 2) determine further terms and conditions of the sale, 3) determine the requirements for further competitive bidding, and 4) require one or more rounds of sealed or open bids from the original offeror and any other qualifying offeror.

**DEPOSIT:**

The deposit will be forfeited to the estate if the successful purchaser fails to complete the sale by the date ordered by the Court.  If the sale is not completed by the buyer approved by the Court, the Court, without further hearing, may approve the sale of the Property to the next highest bidder.

Any questions concerning the intended sale shall be addressed to the undersigned.

Respectfully Submitted,

TRUSTEE (or Debtor)

By  JOHN MALONE, by his Attorney

Dated:  01/02/2025

/s/ Glenn F. Russell, Jr.

| | |
|---|---|
| Printed Name | Glenn F. Russell, Jr. |
| Address | 38 Rock Street, Fall River, MA 02720 |
| BBO# | 656914 |
| Telephone | (888) 400-9318 |
| Email | russ45esq@gmail.com |