# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS (BOSTON)

| | |
|---|---|
| In re:<br><br>John Malone,<br>            Debtor. | Chapter 13<br>Case No.: 24-10885 |

## MOTION OF FOR RELIEF FROM THE AUTOMATIC STAY (REAL PROPERTY)

NewRez LLC d/b/a Shellpoint Mortgage Servicing as servicer for Federal Home Loan Mortgage Corporation, as Trustee for the benefit of the Freddie Mac Seasoned Credit Risk Transfer Trust,Series 2020-1 ("Movant"), a creditor in the above captioned Chapter 13 proceeding, moves this Courtfor an Order pursuant to 11 U.S.C. §362(d) for relief from the automatic stay of 11 U.S.C. §362(a),so that it may foreclosure a first Mortgage which it holds on real property known and numbered 26Savin Hill Ave, Dorchester, MA 02125-1826, for all purposes allowed by the Note (defined below),the Mortgage (defined below), and applicable law, including but not limited to the right to foreclose.The facts and circumstances supporting this Motion are set forth in the Real Estate Worksheetattached hereto as **Exhibit "A"**. In further support of this Motion, Movant respectfully states:

1. A petition for relief under Chapter 13 of the United States Bankruptcy Code was filed on May 8, 2024.

2. A Chapter 13 Plan was confirmed.

3. The Debtor executed and delivered or is otherwise obligated with respect to that certain promissory note in the original principal amount of $103,394.00 (the "Note"). A copy of the Note is attached hereto as **Exhibit "B"**.

4. Pursuant to that certain Mortgage (the "Mortgage"), all obligations (collectively, the "Obligations") of the Debtor under and with respect to the Note and the Mortgage are secured by the Property and the other collateral described in the Mortgage. Said Mortgage was recorded in Suffolk

County Registry of Deeds in Book 37778 at Page 245.  A copy of the recorded Mortgage is attached hereto as **Exhibit "C"**.

     5.     Movant is the current holder of the Mortgage by virtue of an Assignment of Mortgage recorded in Suffolk County Registry of Deeds (the "Assignments"), copies of which are attached hereto and made part of **Exhibit "D"**.

     6.     There is no other collateral securing the Note.

     7.     On or about October 29, 2021, the Debtor and Specialized Loan Servicing LLC entered into a Modification Agreement.  On or about March 15, 2019, the parties entered into a Modification Agreement. Copies of the Modification Agreements are made part and incorporated as **Exhibit "B"**.

     8.     New Rez LLC dba Shellpoint Mortgage Servicing services the underlying mortgage loan and note for the property referenced in this motion for (Movant).  In the event the automatic stay in this case is modified, this case dismisses, and/or the Debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant. Movant,directly or through an agent, has possession of the Note.  The Note is endorsed in blank. Movant is thebeneficiary or the assignee of the Deed of Trust.

     9.     As of July 28, 2025, the unpaid principal balance is $63,364.62 and the outstanding amount of the obligation under the Note and Mortgage less any partial payments or suspense balance  is $153,098.74.

     10.     In addition to the other amounts due to Movant reflected in this Motion, as of the date hereof, in connection with seeking the relief requested in this Motion, Movant will incur $400.00 in legal fees and $199.00 in costs.  Movant reserves all rights to seek an award or allowance of such fees and expenses in accordance with applicable loan documents and related agreements, the Bankruptcy Code and otherwise applicable law.

11.    The following chart sets forth the number and amount of payments due pursuant to the terms of the Note that have been missed by the Debtor as of July 28, 2025:

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Missed Payments |
|---|---|---|---|---|
| 5 Regular Payments | 06/01/2024 | 10/01/2024 | $1,859.46 | $ 9,297.30 |
| 9 Regular Payments | 11/01/2024 | 07/01/2025 | $1,828.58 | $16,457.22 |
| Less post-petition partial payments (Suspense Balance) | | | | ($0.00) |
| **TOTAL** | | | | **$25,754.52** |

12.    The estimated fair market value of the property is $1,246,000.00.  The basis for such valuation is Debtor's Schedule A.  The estimated liquidation value of the Property is $1,165,058.24, calculated as the fair market value less (i) a reasonable realtor's fee (6% [$74,760.00]); (ii) deed stamps ($5,681.76); and (iii) anticipated closing costs associated with a real estate closing ($500.00).

13.    Upon information and belief, the encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Movant are:

| Holder | Type | Amount |
|---|---|---|
| Movant | First Mortgage | $153,098.74- Per Movant's Records |
| City of Boston Real Estate Taxes | Tax Lien | $11,714.17- Per Debtor's Schedules |
| The Bank of NY Mellon Indenture Trustee | Second Mortgage | $26,393.49- Per POC Claim 4 |
| **TOTAL** | | **$191,206.40** |

14.    Upon information and belief, there is no Declaration of Homestead filed on this subject property.

15.    On the petition filing date, the arrears owed totaled $69,210.55, see *Proof of Claim 1-1*.

16.    Cause exists for relief from the automatic stay for the following reasons:

(a)  Movant is entitled to relief from the automatic stay for cause pursuant to 11 U.S.C. §362(d)(1), Debtor has not made payments pursuant to the Note and Mortgage.

WHEREFORE, Movant prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.      Relief from the stay for all purposes allowed by the Note, the Mortgage, and applicable law, including but not limited allowing Movant (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property and any and all other collateral pledged under the Mortgage.

2.      That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code.

3.      For such other relief as the Court deems proper.

> NewRez LLC d/b/a Shellpoint Mortgage
> Servicing as servicer for Federal Home Loan
> MortgageCorporation, as Trustee for the
> benefit of the Freddie Mac Seasoned Credit
> Risk Transfer Trust, Series 2020-1,
> By its Attorneys,

Date: August 27, 2025

> /s/ Brian M. Kiser
> Brian M. Kiser, Esq., BBO #673022
> Marinosci Law Group, P.C.
> 275 West Natick Road, Suite 500
> Warwick, RI  02886
> Telephone: (401) 234-9200
> bkiser@mlg-defaultlaw.com
> bkinquiries@mlg-defaultlaw.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS (BOSTON)**

In re:

John Malone,

     Debtor.

_____/

Chapter 13

Case No.: 24-10885

**CERTIFICATE OF SETTLEMENT CONFERENCE**
**PURSUANT TO MLBR 13-16-1**

I, Brian M. Kiser, do hereby state and certify the following:

On August 4, 2025, at approximately 4:20PM, our office sent Debtor's Counsel an email to initiate a Settlement Conference for the purpose of holding a pre-filing conference pursuant to MLBR 13-16-1. On August 14, 2025, at approximately 10:25AM, Kevin Silva, Attorney for Marinosci Law Group, sent a follow-up email to Debtor's Counsel. Shortly thereafter, at approximately 10:53AM, Attorney Kevin Silva and Attorney Puliafico held a telephonic conference. During the conference, Attorney Puliafico, confirmed that an offer has been accepted on the property and that a Motion to Sell will be filed. Currently the matter remains unresolved.

Signed this 27th day of August, 2025.

/s/ Brian M. Kiser
Brian M. Kiser, Esq., BBO #673022
Kevin Silva, BBO# 691726
Marinosci Law Group, P.C.
275 West Natick Road, Suite 500
Warwick, RI 02886
Telephone: (401) 234-9200
bkiser@mlg-defaultlaw.com
bkinquiries@mlg-defaultlaw.com

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS (BOSTON)

In re:

                                  Chapter 13

John Malone.                        Case No.: 24-10885

              Debtor.

### CERTIFICATE OF SERVICE

I, Brian M. Kiser, of Marinosci Law Group, P.C., do hereby certify that on August 27, 2025 ,
I served a copy of the Motion for Relief From Automatic Stay and supporting documents on the attached
service list by mailing a copy of same by first class mail, postage prepaid or other method specified on
service list.

Signed this 27 day of August , 2025.

                          /s/ Brian M. Kiser
                          Brian M. Kiser, Esq., BBO #673022
                          Marinosci Law Group, P.C.
                          275 West Natick Road, Suite 500
                          Warwick, RI  02886
                          Telephone: (401) 234-9200
                          bkiser@mlg-defaultlaw.com
                          bkinquiries@mlg-defaultlaw.com

### VIA ECF
John A. Ullian, Esq., on behalf of Debtor
Richard King- B, on behalf of Assistant U.S. Trustee
Carolyn Bankowski, on behalf of Trustee
Joseph Dolben, Esq., on behalf of Federal Home Loan Mortgage Corporation, as Trustee for the benefit
of the Freddie Mac Seasoned Credit Risk Transfer Trust, Series 2020-1
Marcus Pratt, Esq., on behalf of The Bank of New York Mellon FKA The Bank of New York, as
successor Trustee to JPMorgan Chase Bank, N.A., as Trustee
Elsie Dias, on behalf of Age Strong Commission

### VIA US MAIL
John Malone
28 Savin Hill Avenue
Dorchester, MA 02125

City of Boston Real Estate Taxes
PO Box 55808
Boston, MA 02205

The Bank of New York Mellon c/o Bank of
America, N.A.
P.O. Box 31785
Tampa, FL 33631-3785

Boston City Assessing Department
1 City Hall Sq, Ste 301
Boston, MA 02201

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS (BOSTON)

| | |
|---|---|
| In re:<br>John Malone,<br><br>Debtor. | Chapter 13<br>Case No.: 24-10885 |

## ORDER RE: MOTION
## FOR RELIEF FROM THE AUTOMATIC STAY

NewRez LLC d/b/a Shellpoint Mortgage Servicing as servicer for Federal Home Loan Mortgage Corporation, as Trustee for the benefit of the Freddie Mac Seasoned Credit Risk Transfer Trust, Series 2020-1 ("Movant"), by and through its attorneys, Marinosci Law Group, P.C., having filed for Relief From Stay regarding real property known and numbered as 26 Savin Hill Ave, Dorchester, MA 02125-1826, notice having been given and good cause appearing therefore, it is hereby ORDERED that the Motion of Movant for Relief From Stay is allowed and Movant is granted relief from the automatic stay pursuant to 11 U.S.C. §362(d), so that it, and its successors and assigns, may proceed to exercise its rights pursuant to the Note and Mortgage and applicable state and federal law and to commence a summary process action against occupants of that property. This Order shall be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Bankruptcy Code.

At _____ this _____ day of _____, 2025.

_____
U.S. BANKRUPTCY JUDGE

<u>EXHIBIT A</u>

## OFFICIAL LOCAL FORM 13

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS (BOSTON)

In re:
John Malone,

           Debtor.

Chapter 13

Case No.: 24-10885

### MOTION FOR RELIEF FROM STAY - REAL ESTATE WORKSHEET
(To be attached to Motion for Relief from Stay)

I, _____ Shirl Begay _____ of NewRez, LLC d/b/a Shellpoint Mortgage Servicing as servicer for Federal Home Loan Mortgage Corporation, as Trustee for the benefit of the Freddie Mac Seasoned Credit Risk Transfer Trust, Series 2020-1 (hereinafter, "Movant") hereby declare (or certify, verify, or state):

### BACKGROUND INFORMATION

1.  (a)  Date chapter 13 petition was filed (If case has been converted from chapter 7 to chapter 13, provide date of petition and date of conversion): 05/08/2024.

(b)  Address of real property which is the subject of this motion: 26 Savin Hill Ave, Dorchester, Massachusetts 02125-1826.

2.  (a)  Original Mortgagee's Name and Address: Mortgage Registration Systems, Inc., as nominee for MBNA America (Delaware) N.A., P.O. Box 2028, Flint, MI 48501-2025.

(b)  Name and Address of Current Mortgage Holder: Federal Home Loan Mortgage Corporation, as Trustee for the benefit of the Freddie Mac Seasoned Credit Risk Transfer Trust, Series 2020-1 c/o NewRez, LLC d/b/a Shellpoint Mortgage Servicing, P.O. Box 650840, Dallas, Texas 75265-0840.

(c)  Name of Note Holder, if different than Mortgage Holder: Same.

3.  Date of Mortgage: 07/22/2005.

4.  Post-Petition payment address, if different than above: NewRez d/b/a Shellpoint Mortgage Servicing, PO Box 650840, Dallas, TX 75265-0840.

5.  The manner in which the Movant perfected its interest in the property: Recorded Mortgage and Assignments.

6.  Other collateral securing the note: None.

7.    Other liens and encumbrances affecting the property in the order of their priority:

| Names of Senior Lienholder | Amount Due | Source of Information (e.g., Schedules filed by Debtor(s), public records) |
|---|---|---|
| Movant's Lien | $153,098.74- as of 07/28/2025 | Movant's records |
| Second Mortgage The Bank of NY Mellon Indenture Trustee | $26,393.49 | Per POC Claim 4-1 |
| City of Boston | $11,714.17 | Per Debtor's Schedules |

8.    Existence and Date of Recorded Homestead (if known): there is no Declaration of Homestead filed on this subject property.

**DEBT/VALUE REPRESENTATIONS**

9.    Total pre-petition and post-petition indebtedness of Debtor(s) to Movant at the time of filing the motion: $153,098.74 as of 07/28/2025

(Note: this amount may not be relied on as a "payoff" quotation.)

10.    (a) Movant's estimated fair market value of the real property: $1,246,000.00.

(b) Source of estimated fair market valuation: Debtor's Schedule A

(c) Liquidation value of the real property: $1,165,058.24.

**STATUS OF DEBT AS OF THE PETITION DATE**

11.    (a) Total pre-petition indebtedness of Debtor(s) to Movant as of petition filing date: $125,799.01- Please see Proof of Claim (1-1) filed 05/31/2024.

(b)Amount of principal: $63,364.62.

(c)Amount of interest: $6,500.19.

(d)Amount of escrow (taxes and insurance): $0.00

(e)Amount of forced placed insurance expended by Movant: $0.00

(f)Amount of Attorney's fees billed to Debtor(s) pre-petition: $0.00

(g)Amount of pre-petition late fees, if any, billed to Debtor(s): $0.00

12.     Contractual interest rate: <u>4.12500%- Fixed</u> (If interest rate is (or was) adjustable, please list the rate(s) and dates(s) the rate(s) was/were in effect on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here:

5.875% as of 9/1/2005

4.125% as of 03/01/2019 to Present

13.     Explain any additional pre-petition fees, charges or amounts charged to the account of the Debtor(s) and not listed above:

(If additional space is needed, list the amounts on a separate sheet and attach the sheet as an exhibit to this form; list the exhibit number here: _____).

Fees, Costs Due: $11,563.24

Escrow deficiency for funds advanced: $44,370.96

**AMOUNT OF ALLEGED POST-PETITION DEFAULT (AS OF JULY 28, 2025)**

14. Date last payment was received: No post-petition payment received.

15. Total number of post-petition payments due from the date of the filing of petition through the date of this Motion or (mm/dd/yyyy): <u>07/01/2025:14.</u>

**SCHEDULE OF POST-PETITION PAYMENTS IN DEFAULT**
(Do not substitute computer generated internal accountings):

| Payment Due Date | Amt. of Payment Due | Amt. of Payment Rec'd | Date Payment Rec'd | Amt. Applied to Principal | Amt. Applied to Interest | Amt. Applied to Escrow | Late Fee Charged If any | Amt. Not Applied |
|---|---|---|---|---|---|---|---|---|
| 06/01/2024 | $1,859.46 | | | | | | | |
| 07/01/2024 | $1,859.46 | | | | | | | |
| 08/01/2024 | $1,859.46 | | | | | | | |
| 09/01/2024 | $1,859.46 | | | | | | | |
| 10/01/2024 | $1,859.46 | | | | | | | |
| 11/01/2024 | $1,828.58 | | | | | | | |
| 12/01/2024 | $1,828.58 | | | | | | | |
| 01/01/2025 | $1,828.58 | | | | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 02/01/2025 | $1,828.58 | | | | | | | |
| 03/01/2025 | $1,828.58 | | | | | | | |
| 04/01/2025 | $1,828.58 | | | | | | | |
| 05/01/2025 | $1,828.58 | | | | | | | |
| 06/01/2025 | $1,828.58 | | | | | | | |
| 07/01/2025 | $1,828.58 | | | | | | | |
| | | | | | | | | |
| **TOTAL** | **$25,754.52** | | | | | | | |

16.    Amount of Movant's Attorney's fees charged to Debtor to date for the preparation and filing of this Motion (will be incurred): $599.00.

17.    Other Attorney's fees charged to Debtor post-petition: $0.00

18.    Amount of Movant's post-petition inspection fees: $0.00

19.    Amount of Movant's post-petition appraisal/broker's price opinion: $0.00

20.    Amount of forced placed insurance or insurance provided by the Movant post-petition: $0.00.

21.    Sum held in suspense by Movant in connection with this contract, if applicable: $0.00.

22.    Amount of other post-petition advances or charges (e.g. real estate taxes, insurance): $0.00.

23.    Total amount of post-petition default, including all payments, fees, and charges: $26,353.52.

24.Amount and date of post-petition payments offered by the Debtor(s) and refused by the Movant: Amount(s): No payment has been refused

Date (s): _____

**REQUIRED ATTACHMENTS TO MOTION**

Attach the following documents to this motion and indicate the exhibit number associated with the documents:

(1)     Copies of documents that indicate Movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the mortgage and any assignments in the chain from the original mortgagee to the current moving party. (Exhibits B-D)

(2)     Copies of documents establishing proof of standing to bring this motion if different from the above. (N/A)

(3)     Copies of documents establishing that Movant's interest in the real property is perfected. For the purposes of example only, a complete and legible copy of the Financing Statement (UCC-1) filed with either the Clerk's Office or the Register of the county the property is located in. (Exhibits N/A)

**CERTIFICATION AND DECLARATION FOR BUSINESS RECORDS**

The undersigned certifies that the information provided in this Worksheet and any exhibits attached to this Worksheet (other than transactional documents attached as required in paragraphs (1) through (3) above) are derived from records that (a) were made at or near the time of the occurrence of the matters set forth by, or from information transmitted by a person with knowledge of those matters; and (b) were prepared and kept in the regular course of business.

In the event the Worksheet is not fully completed, Movant shall explain the reasons therefor and the reasonable efforts made to obtain the information. _____

_____

The undersigned further certifies that copies of any transactional documents attached to this Worksheet as required by paragraphs 1, 2, or 3, immediately above, are true and accurate copies of the original documents. The undersigned further certifies that the original documents are in Movant's possession, except as follows: _____.

**I/WE DECLARE UNDER THE PENALTY OF PERJURY THAT THE FOREGOING REPRESENTATIONS OF FACT ARE TRUE AND CORRECT TO THE BEST OF MY/OUR KNOWLEDGE AND BELIEF.**

August 26, 2025

Signature                          Date

Shirl Begay

Printed Name
Bankruptcy Case Manager II
NewRez LLC d/b/a/ Shellpoint Mortgage

Title and Organization

| Post-Petition Due date | Date Received | Amount Received | Amount Due | Suspense Application | Suspense Balance |
|---|---|---|---|---|---|
| 6/1/2024 | | | $1,859.46 | $  - | $  - |
| 7/1/2024 | | | $1,859.46 | $ (1,859.46) | (1,859.46) |
| 8/1/2024 | | | $1,859.46 | $ (1,859.46) | (3,718.92) |
| 9/1/2024 | | | $1,859.46 | $ (1,859.46) | (5,578.38) |
| 10/1/2024 | | | $1,859.46 | $ (1,859.46) | (7,437.84) |
| 11/1/2024 | | | $1,859.46 | $ (1,859.46) | (9,297.30) |
| 12/1/2024 | | | $1,828.58 | $ (1,828.58) | (11,125.88) |
| 1/1/2025 | | | $1,828.58 | $ (1,828.58) | (12,954.46) |
| 2/1/2025 | | | $1,828.58 | $ (1,828.58) | (14,783.04) |
| 3/1/2025 | | | $1,828.58 | $ (1,828.58) | (16,611.62) |
| 4/1/2025 | | | $1,828.58 | $ (1,828.58) | (18,440.20) |
| 5/1/2025 | | | $1,828.58 | $ (1,828.58) | (20,268.78) |
| 6/1/2025 | | | $1,828.58 | $ (1,828.58) | (22,097.36) |
| 7/1/2025 | | | $1,828.58 | $ (1,828.58) | (23,925.94) |
| | | | | $  - | (25,754.52) |
| | | | | $  - | (25,754.52) |
| | | | | $  - | (25,754.52) |
| | | | | $  - | (25,754.52) |
| | | | | $  - | (25,754.52) |
| | | | | $  - | (25,754.52) |
| | | | | $  - | (25,754.52) |
| | | | | $  - | (25,754.52) |
| | | | | $  - | (25,754.52) |
| | | | | $  - | (25,754.52) |
| | | | | $  - | (25,754.52) |
| | | | | $  - | (25,754.52) |
| | | | | $  - | (25,754.52) |
| | | | | $  - | (25,754.52) |
| | | | | $  - | (25,754.52) |
| | | | | $  - | (25,754.52) |
| | | | | $  - | (25,754.52) |
| | | | | $  - | (25,754.52) |
| | | | | $  - | (25,754.52) |
| | | | | $  - | (25,754.52) |
| | | | | $  - | (25,754.52) |
| | | | | $  - | (25,754.52) |
| | | | | $  - | (25,754.52) |
| | | | | $  - | (25,754.52) |
| | | | | $  - | (25,754.52) |
| | | | | $  - | (25,754.52) |
| 14 | 0 | $0.00 | $25,754.52 | $ (25,754.52) | |

| Loan Number | ███████ |
|---|---|
| Debtor | John Mawee |
| BK filed date | 5/8/2024 |
| BK Case # | 24-10885 |
| Post Next Due | 6/1/2024 |
| Suspense | $  - |

| Due Date | Due Amount | # Months | | Total Due |
|---|---|---|---|---|
| 6/1/2024 - 10/1/2024 | $1,859.46 | 5 | $ | 9,297.30 |
| 11/1/2024 - 7/1/2025 | $1,828.58 | 9 | $ | 16,457.22 |
| | | | $ | - |
| | | | $ | - |
| | | | $ | - |
| | | | $ | - |
| | | | $ | - |
| | | | $ | - |
| | | | $ | - |
| | Subtotal | | $ | 25,754.52 |
| | Less Unapplied | | $ | - |
| | Total to bring current | | $ | 25,754.52 |

$     25,754.52
$    (25,754.52)
$         -      unapplied

**Payment Address:**
Shellpoint Mortgage Servicing
PO Box 650840
Dallas, TX 75265-0840

**Overnight Payment Address:**
Shellpoint Mortgage Servicing
Attn Payment Processing
75 Beattie Place Ste LL202
Greenville, SC 29601

| Due Date | P&I | Interest Rate | Escrow | Total | Filed w/Courts |
|---|---|---|---|---|---|
| 6/1/2024 | $272.04 | 4.125% | $1,587.42 | $1,859.46 | 5/31/2024 |
| 11/1/2024 | $272.04 | 4.125% | $1,556.54 | $1,828.58 | 10/11/2024 |
| | | | | | |
| | | | | | |

EXHIBIT B

Prepared by: CAROLYN GAINES

# NOTE

JULY 27, 2005                    DORCHESTER                    MASSACHUSETTS
[Date]                           [City]                        [State]

26 SAVIN HILL AVE, DORCHESTER, MA 02125-1826
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received. I promise to pay U.S. $ 103,394.00      (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
MBNA America (Delaware), N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      5.875 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   FIRST        day of each month beginning on
SEPTEMBER 01, 2005 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  AUGUST 01, 2035      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 660694, Dallas, TX 75266-0694
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 611.53

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  FIFTEEN         calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    2.500 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**MULTISTATE FIXED RATE NOTE**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

Page 1 of 2

3SN (0207) 01        CHL (010/04)(d)        VMP Mortgage Solutions, Inc (800)521-7291        **Form 3200 1/01**

Initial  

#### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

#### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

#### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

### 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

### 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

### 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

PAY TO THE ORDER OF

**Countrywide Home Loans, Inc.**

WITHOUT RECOURSE

TREASURY BANK, N.A.
AS AGENT FOR
MBNA AMERICA (DELAWARE), N.A.

BY _____
JULIA ORDUNO
COLLATERAL PROCESSING OFFICER

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY _____
David A. Spector
Managing Director

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
John Malone -Borrower                                              -Borrower

_____ (Seal)        _____ (Seal)
-Borrower                                                          -Borrower

[Sign Original Only]

5N (02/7-01   CHL (10/04)          Page 2 of 2                    Form 3200 1/01

VESTING : Specialized Loan Servicing LLC, as Attorney-in-Fact for Federal Home Loan Mortgage Corporation, as
Trustee for the benefit of the Freddie Mac Seasoned Credit Risk Transfer Trust, Series 2020-1
CURRENT UPB: $37,983.75
INTEREST ADVANCE: $0.00
ADMIN FEES: $0.00
ESCROW ADVANCE: $23,994.59
CORPORATE ADVANCES PAID: $1,386.28
CORPORATE ADVANCES UNPAID: $0.00
CAPITALIZED AMOUNT: $25,380.87
NEW PRINCIPAL BALANCE: $63,364.62
SPOC: Tricinda

[Space Above This Line For Recording Data]

## MODIFICATION AGREEMENT

Borrower ("I"): JOHN MALONE whose address is 26 SAVIN HILL AVE 3, DORCHESTER, MA 02125
("Borrower").

If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document words
signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate

Lender or Servicer ("Lender"): Specialized Loan Servicing LLC a whose principal place of business and
mailing address is 6200 S. Quebec St Greenwood Village, CO 80111 ("Lender").

Date of first lien mortgage, deed of trust, or security deed ("Mortgage") recorded in Book or Liber See Original
Instrument; of the Records of Suffolk County, MA and Note ("Note"): 07/22/2005

Property Address ("Property"): 26 SAVIN HILL AVE, DORCHESTER, MA 02125

If my representations in Section 1 continue to be true in all material respects, then this Modification Agreement
("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2)
the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been
amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined
have the meaning given to them in Loan Documents.

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1    **My Representations.** I certify, represent to Lender, covenant and agree:

    A.    I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan
        Documents or my default is imminent, and (ii) I do not have sufficient income or access to
        sufficient liquid assets to make the monthly mortgage payments now or in the near future;

B.   Property Type: Single Family
C.   There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;
D.   I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Modification Program ("Program")).
E.   Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
F.   If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
G.   If my workout required a trial period plan, I have made or will make all payments required under a trial period plan.

2   **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A.   If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and
B.   I understand that the Loan Documents will not be modified unless and until the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3   **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on 11/01/2021 (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on 12/01/2021.

A.   The new Maturity Date will be: 07/01/2059.
B.   The modified Principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges in addition to any fees or costs that have been or will be incurred in connection with enforcement of the security agreement including those costs and fees associated with the closing and dismissal of any foreclosure action, as applicable and deferred principal and other deferred amounts from a prior modification, collectively, "Unpaid Amounts") less any amounts paid to Lender but not previously credited to my Loan. The new Principal balance of my Note will be $63,364.62 (the 'New Principal Balance'). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C. Interest at the rate of 4.125% will begin to accrue on the New Principal Balance as of 11/01/2021 and the first new monthly payment on the New Principal Balance will be due on 12/01/2021. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly P&I Payment Amount | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|-------|---------------|---------------------------|----------------------------|--------------------------------|------------------------|-------------------|----------------------------|
| 1-39  | 4.125 %       | 11/01/2021                | $272.04                    | $1,262.10                      | $1,534.14              | 12/01/2021        | 470                        |

Borrower promises to make monthly payments of principal and interest per the above payment schedule beginning on 12/01/2021 and continuing thereafter on the same day of each succeeding month.

I will make these payments every month per the above payment schedule, in addition to 1 final balloon payment in the amount of $4,995.24. The Balloon payment amount stated is if all monthly payments have been made as scheduled. At the end of the term, any balance remaining will have to be paid.

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly. Your initial monthly escrow payment will be $1,262.10. Your initial total monthly payment will be $1,534.14.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest- only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.   If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.   If on the 07/01/2059, ('Maturity' or 'Modified Maturity Date'), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Modified Maturity Date.

4.   **Additional Agreements.** I agree to the following:

A.   That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.   That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C.   To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.   Funds for Escrow Items. I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items.

Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E.    That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F.    That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G     That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.  That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.  That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product (s), and/ or subordination agreement (s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/ or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement (s), title insurance product (s) and/ or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Modification program.

L.  Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, for mailing address, where applicable, 1901 E. Voorhees Street, Suite C, Danville, IL 61834███████ n cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan (if required for this modification) and this Agreement by Lender to (i) the U.S. Department of the Treasury; (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan (s); (iv) companies that perform support services for the Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N.   That if any document related to the Loan Documents and/ or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4 N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.   That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

In Witness Whereof, the Lender and I have executed this Agreement

Specialized Loan Servicing LLC
As Servicer

By _____ (Seal)
Name:    Steven Ross
Its:       Second Assistant VP
Date:     NOV 1 6 2021

_____          Date: ___ Oct 29/2021
JOHN MALONE

If the borrower is an inter vivos revocable trust, we require each of the trustees to sign this document in the signature blocks below

_____, Trustee if the          _____ Trust instrument dated
_____, for the benefit of       _____ (Borrower)

**Total Number of Pages: 9**
**Property Address: 26 SAVIN HILL AVE, DORCHESTER, MA 02125**

**After recording please return to:**
**SPECIALIZED LOAN SERVICING LLC**

**8742 LUCENT BLVD, SUITE 300**
**HIGHLANDS RANCH, CO  80129**

———————————————————*[Space Above This Line For Recording Data]*———————————————————

# MODIFICATION AGREEMENT

Executed on this day: **March 15, 2019**
Borrower ("I"): **JOHN MALONE** whose address is **26 SAVIN HILL AVE 3, DORCHESTER, MA  02125**
("Borrower").
If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For
purposes of this document words signifying the singular (such as "I") shall include the plural (such as
"we") and vice versa where appropriate.
Lender or Servicer ("Lender"): **SPECIALIZED LOAN SERVICING LLC** whose principal place of business
and mailing address is **8742 LUCENT BLVD, SUITE 300, HIGHLANDS RANCH, CO  80129** ("Lender").
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): **July 22, 2005**

Original security instrument in the amount of **$103,394.00** and recorded on **August 11, 2005** in Book,
Volume, or Liber No. **37778**, at Page **245** (or as Instrument No. **2005 00105865**) , in the Office of the
County Clerk or Register of **SUFFOLK** County, State of **MASSACHUSETTS**.

█████████████ 9815

Property Address ("Property"): **26 SAVIN HILL AVE, DORCHESTER, MA 02125**

Legal Description: **SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

If my representations in Section 1 continue to be true in all material respects, then this Modification
Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the
Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may
previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this
Agreement and not defined have the meaning given to them in Loan Documents.

This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations.** I certify, represent to Lender, covenant and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
   B. Property Type: Single Family
   C. There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;
   D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Modification Program ("Program"));
   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
   G. I have made or will make all payments required under a trial period plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and
   B. I understand that the Loan Documents will not be modified unless and until the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **March 1, 2019** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on **April 1, 2019.**

   A. The new Maturity Date will be: **March 1, 2059.**

   B. The modified Principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, if applicable in addition to any fees or costs that have been or will be incurred in connection with the enforcement of the security agreement including those costs and fees associated with the closing and dismissal of any foreclosure action as applicable and deferred principal and other deferred amounts from a prior modification, collectively, "Unpaid Amounts") less any amounts paid to Lender but not previously credited to my Loan. The new Principal balance of my Note will be

$38,765.05 (the 'New Principal Balance'). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C.  Interest at the rate of **4.125%** will begin to accrue on the New Principal Balance as of **March 1, 2019** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **April 1, 2019**. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly P&I Payment Amount | Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 - 40 | 4.125% | 03/01/2019 | $165.04 | $801.52, may adjust periodically | $966.56, may adjust periodically | 04/01/2019 | 480 |

Borrower promises to make monthly payments of principal and interest per the above payment schedule beginning on **April 1, 2019**, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. At the end of the term, any balance remaining will have to be paid.

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly. Your initial monthly escrow payment will be **$801.52**. Your initial total monthly payment will be **$966.56**.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest- only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.  If on **March 1, 2059**, ('Maturity' or 'Modified Maturity Date'), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Modified Maturity Date.

4.  **Additional Agreements.** I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co- borrower is deceased; (ii) the borrower and co- borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. Funds for Escrow Items. I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow

Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments. ·

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.  That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product (s), and/ or subordination agreement (s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/ or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement (s), title insurance product (s) and/ or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Modification program.

L.  Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, for mailing address, where applicable, 1901 E. Voorhees Street, Suite C, Danville, IL 61834,                    n cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury; (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan (s); (iv) companies that perform support services for the Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N.  That if any document related to the Loan Documents and/ or this Agreement is lost, misplaced, misstated,inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.  That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

_____ (Seal)   Date: _March 25, 2019_
**JOHN MALONE**

If the borrower is an inter vivos revocable trust, we require each of the trustees to sign this document in the signature blocks below.

_____ Trustee of the   _____ Trust instrument dated

_____ For the benefit of   _____ (Borrower)

## ACKNOWLEDGMENT

Commonwealth of __MA__   §
§
County of __SUFFOLK__   §

On this the __25th__ day of __March__ _____, __2019__, before me, the undersigned notary public, personally appeared **JOHN MALONE**, proved to me through satisfactory evidence of identification, which were __MA Drivers License__, to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he/she signed it voluntarily for its stated purpose.

In witness whereof I hereunto set my hand and official seal.

_Judith D. Smith_
Official Signature of Notary

_Judith D. Smith_
Printed Name

_Branch Manager / Notary_
Title of Officer

My Commission Expires _____

**JUDITH D. SMITH**
**Notary Public**
**COMMONWEALTH OF MASSACHUSETTS**
**My Commission Expires**
**July 11, 2025**

(Seal)

Modification Agreement
Proprietary W3078H   Page 7 of 9   90386MA 07/17
©2015, The Compliance Source, Inc.

ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE
SPECIALIZED LOAN SERVICING LLC

By: _____                    APR 1 1 2019

    Ami McKernan          -Lender          Date of Lender's Signature

        Second Assistant VP

**ACKNOWLEDGMENT**

State of _____ Colorado _____     §

County of _____ Douglas _____     §
                                  §

The foregoing instrument was acknowledged before me this _____ APR 1 1 2019 _____ by

_Ami McKernan_, _Second Assistant VP_ _____ of SPECIALIZED LOAN

SERVICING LLC a DELAWARE corporation, on behalf of the corporation.

ANNA SPAIN
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID
MY COMMISSION EXPIRES 09/27/2022

_____
Signature of Person Taking Acknowledgment

        Anna Spain
Printed Name

        Notary Public
Title or Rank

(Seal)          Serial Number, if any: _____

## EXHIBIT A

**BORROWER(S): JOHN MALONE**

████████████████

**LEGAL DESCRIPTION:**

STATE OF MASSACHUSETTS, COUNTY OF SUFFOLK, AND DESCRIBED AS FOLLOWS:

THE LAND WITH THE BUILDINGS THEREON SITUATED IN THAT PART OF EASTERN, SUFFOLK COUNTY, MASSACHUSETTS FORMERLY DORCHESTER BEING NUMBERED 26 SAVIN HILL AVENUE IN THE PRESENT NUMBERING, AND BEING LOT E ON A PLAN OF LAND MADE BY WILLIAM KELLY, C.E., DATED FEBRUARY 17, 1905, RECORDED WITH SUFFOLK DEEDS, BOOK 3032, PAGE 245; REFERENCE IS MADE TO SAID PLAN FOR A MORE PARTICULAR DESCRIPTION.

BEING THE SAME PROPERTY CONVEYED FROM NORMAN S PLEADWELL AND CATHLEEN R DALEY TO JOHN MALONE IN DEED RECORDED 09/30/1986 VOL. 12916, PAGE 283

ADDRESS: 26 SAVIN HILL AVE.; DORCHESTER, MA 02125.

BEING THE SAME PROPERTY CONVEYED TO JOHN MALONE FROM NORMAN S. PLEADWELL AND CATHLEEN R. DALEY BY DEED DATED SEPTEMBER 29, 1986 AND RECORDED ON SEPTEMBER 30, 1986 IN THE REGISTER OF DEED FOR SUFFOLK COUNTY, MA  IN DEED BOOK: 12916, PAGE: 283

Parcel ID Number: ████████
ALSO KNOWN AS: 26 SAVIN HILL AVE, DORCHESTER, MA 02125



EXHIBIT C

Recording Requested by &
When Recorded Return To:
US Recordings, Inc.
2925 Country Drive Ste 201
St. Paul, MN 55117

Prepared By:
CAROLYN GAINES

Bk: 37778 Pg: 245    Doc: MTG
Page: 1 of 16    08/11/2005 10:47 AM

--- [Space Above This Line For Recording Data] ---

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   JULY 22, 2005     , together with all Riders to this document.

(B) "Borrower" is
JOHN MALONE

Borrower is the mortgagor under this Security Instrument.

(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel.

(D) "Lender" is
MBNA America (Delaware), N.A.
Lender is a NATIONAL ASSOCIATION
organized and existing under the laws of THE UNITED STATES
Lender's address is
1100 North King Street, Wilmington, DE 19884 1112

(E) "Note" means the promissory note signed by Borrower and dated  JULY 22, 2005      . The Note states that Borrower owes Lender
ONE HUNDRED THREE THOUSAND THREE HUNDRED NINETY FOUR and 00/100

Dollars (U.S. $ 103,394.00      ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than  AUGUST 01, 2020    .

(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

**MASSACHUSETTS**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS**

Page 1 of 11

-6A(MA) (0401)  CHL (01/04)(d)    VMP Mortgage Solutions (800)521-7291    Form 3022 1/01

(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☒ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(L) "Escrow Items" means those items that are described in Section 3.

(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

### TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

COUNTY                    of                    SUFFOLK                    :
[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number:                                        which currently has the address of
26 SAVIN HILL AVE, DORCHESTER
[Street/City]
Massachusetts 02125-1826 ("Property Address"):
[Zip Code]

-6A(MA) (0401)    CHL (01/04)            Page 2 of 11            Form 3022 1/01

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.

Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver. Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

-6A(MA) (0401)   CHL (01/04)              Page 6 of 11              Initials ____   Form 3022 1/01

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this

Security Instrument; (b) is not personally obligated to pay the sum█████████████████
(c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration. If B▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮**
shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the
earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security
Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to
reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower:
(a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no
acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses
incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees,
property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest
in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably
require to assure that Lender's interest in the Property and rights under this Security Instrument, and
Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender
may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms,
as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's
check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency,
instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security
Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.
However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the
Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.
A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments
due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under
the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan
Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given
written notice of the change which will state the name and address of the new Loan Servicer, the address to
which payments should be made and any other information RESPA requires in connection with a notice of
transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the
purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer
or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise
provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an
individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security
Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of,
this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in
compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a
reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time
period which must elapse before certain action can be taken, that time period will be deemed to be reasonable
for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant
to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to
satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances
defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following
substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides,
volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b)
"Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate
to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action,
remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition"
means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous
Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor
allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b)
which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous
Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences
shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances
that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property
(including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or
other action by any governmental or regulatory agency or private party involving the Property and any
Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental
Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any
Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance
which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or
regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance
affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance
with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the STATUTORY POWER OF SALE and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower, and to other persons prescribed by Applicable Law, in the manner provided by Applicable Law. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower waives all rights of homestead exemption in the Property and relinquishes all rights of curtesy and dower in the Property.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
                                              -Borrower

_____     _____ (Seal)
                                              -Borrower

_____ (Seal)
                                              -Borrower

_____ (Seal)
                                              -Borrower

**COMMONWEALTH OF MASSACHUSETTS,** ███████ _Suffolk_ **County ss:**

On this _22nd_ day of _July 2005_, before me, the undersigned notary public, personally appeared _John Malone_

proved to me through satisfactory evidence of identification, which was/were _Mass license_ to be the person(s) whose name(s) is/are signed on the preceding document, and acknowledged to me that he/she/they signed it voluntarily for its stated purpose.

My Commission Expires: _1/22/10_
(Seal)

_Scott Fishman_
Notary Public

-6A(MA) (0401)    CHL (01/04)    Page 11 of 11    Initials _JmM_    Form 3022 1/01

# 1-4 FAMILY RIDER
### (Assignment of Rents)

Recording Requested by &
When Recorded Return To:
US Recordings, Inc
2925 Country Drive Ste 201
St Paul, MN 55117

Prepared By:
CAROLYN GAINES



THIS 1-4 FAMILY RIDER is made this TWENTY-SECOND    day of JULY, 2005
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure
Borrower's Note to
MBNA America (Delaware), N.A.

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:
26 SAVIN HILL AVE
DORCHESTER, MA 02125-1826
[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**MULTISTATE 1-4 FAMILY RIDER - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

-57R (0401).01    **CHL (06/04)(d)**    Page 1 of 3                                Initials ____

VMP Mortgage Solutions, Inc. (800)521-7291                              Form 3170 1/01




**A. ADDITIONAL PROPERTY SUBJECT TO THE** ████████████████████

Property described in the Security Instrument, the following items now or hereafter attached to the Property to the extent they are fixtures are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Section 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Section 19 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, Section 6 concerning Borrower's occupancy of the Property is deleted.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until: (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument, and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and

Initials

Form 3170 1/01

maintenance costs, insurance premiums, taxes, assessments ▮▮▮▮▮▮▮▮▮▮▮
sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Section 9.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)
JOHN MALONE                                       - Borrower

_____ (Seal)
                                                  - Borrower

_____ (Seal)
                                                  - Borrower

_____ (Seal)
                                                  - Borrower

-57R (0401).01 CHL (06/04)          Page 3 of 3                 Form 3170 1/01



*Appraisal * Title * Settlement * Default*

RE: MALONE, JOHN W.

26 SAVIN HILL AVE.
DORCHESTER, MA 02125
SUFFOLK COUNTY

——————————— LEGAL DESCRIPTION ———————————

THE LAND WITH THE BUILDINGS THEREON SITUATED IN THAT PART
OF EASTERN, SUFFOLK COUNTY, MASSACHUSETTS FORMERLY
DORCHESTER BEING NUMBERED 26 SAVIN HILL AVENUE IN THE
PRESENT NUMBERING, AND BEING LOT E ON A PLAN OF LAND MADE
BY WILLIAM KELLY, C.E., DATED FEBRUARY 17, 1905, RECORDED
WITH SUFFOLK DEEDS, BOOK 3032, PAGE 245; REFERENCE IS MADE
TO SAID PLAN FOR A MORE PARTICULAR DESCRIPTION.

BEING THE SAME PROPERTY CONVEYED FROM NORMAN S  PLEADWELL
AND CATHLEEN R DALEY TO JOHN MALONE IN DEED RECORDED
09/30/1986 VOL.  12916, PAGE 283

ADDRESS: 26 SAVIN HILL AVE.;  DORCHESTER, MA 02125.



MORTGAGE
US Recordings

EXHIBIT D

# Suffolk County Registry of Deeds

# Electronically Recorded Document

### This is the first page of the document - Do not remove

---

### Recording Information

Document Number
Document Type              ████████
Recorded Date              : January 23, 2018
Recorded Time              : 12:28:11 PM

Recorded Book and Page     : 59096 / 277
Number of Pages(including cover sheet)  : 3
Receipt Number             : ████
Recording Fee              : $75.00

**Suffolk County Registry of Deeds**
**Stephen J. Murphy, Register**
**24 New Chardon Street**
**Boston, MA 02114**
**617-788-8575**
**Suffolkdeeds.com**

_____ [Space Above This Line for Recording Data] _____

This Document Prepared By:
**LISA CAMPBELL MOORE**
**BANK OF AMERICA**
MC: FL1-908-01-05
**4909 SAVARESE CIR.**
**TAMPA, FL 33634**

When Recorded Mail To:
**FIRST AMERICAN TITLE COMPANY**
**1795 INTERNATIONAL WAY**
**IDAHO FALLS, ID  83402**

## ASSIGNMENT OF MORTGAGE

For Value Received, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS
NOMINEE FOR MBNA AMERICA (DELAWARE), N.A., ITS SUCCESSORS AND ASSIGNS** (herein
"Assignor"), whose address is **P.O. Box 2026, Flint, MI 48501-2026**, does hereby grant, assign, transfer and
convey unto **BANK OF AMERICA, N.A.** (herein "Assignee"), whose address is **1800 TAPO CANYON
ROAD, SIMI VALLEY, CA 93063**, and its successors and assigns all its right, title and interest in and to a
certain Mortgage described below.

Mortgagee: **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS
NOMINEE FOR MBNA AMERICA (DELAWARE), N.A., ITS SUCCESSORS AND ASSIGNS**
Borrower(s): **JOHN MALONE**
Date of Mortgage: **JULY 22, 2005**
Original Loan Amount: **$103,394.00**
Property Address: **26 SAVIN HILL AVE, DORCHESTER, MASSACHUSETTS 02125**

Recorded on **AUGUST 11, 2005** in **INSTRUMENT NO. 2005 00105865  BOOK 37778  PAGE 245** of the
official Records of **SUFFOLK COUNTY**, State of **MASSACHUSETTS**

Page 1



IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
___**JAN 1 9 2018**_____
Date

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR
MBNA AMERICA (DELAWARE), N.A., ITS SUCCESSORS AND ASSIGNS**

By: _____   **MARTHA CORREA**
(Signature)                       **ASSISTANT VICE PRESIDENT**

_____ [Space Below This Line for Acknowledgments] _____

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

The foregoing instrument was acknowledged before me this __Jan 19, 2018_____

by MARTHA CORREA, ASSISTANT VICE PRESIDENT, of MORTGAGE ELECTRONIC

REGISTRATION SYSTEMS, INC. ("MERS") AS NOMINEE FOR MBNA AMERICA

(DELAWARE), N.A., ITS SUCCESSORS AND ASSIGNS, a company, on behalf of the company  He/She

is personally known to me or who has produced _____ N|A _____ as identification

_____
Notary Public

ALEXANDRA MONEGRO
Notary Public, State of Florida
Commission# FF 994841
My comm. expires May 22, 2020

Alexandra Monegro
Printed Name: _____
My commission expires: __MAY 22, 2020__

Page 2

# Suffolk County Registry of Deeds

# Electronically Recorded Document

This is the first page of the document - Do not remove

## Recording Information

| | |
|---|---|
| Document Number | |
| Document Type | |
| Recorded Date | March 28, 2018 |
| Recorded Time | 09:57:20 AM |
| Recorded Book and Page | 59360 / 322 |
| Number of Pages(including cover sheet) | 3 |
| Receipt Number | |
| Recording Fee | $75.00 |

**Suffolk County Registry of Deeds**
**Stephen J. Murphy, Register**
**24 New Chardon Street**
**Boston, MA 02114**
**617-788-8575**
**Suffolkdeeds.com**

When Recorded Return To:
Bank of America
C/O Nationwide Title Clearing, Inc.
2100 Alt. 19 North
Palm Harbor, FL 34683



## ASSIGNMENT OF MORTGAGE

**FOR GOOD AND VALUABLE CONSIDERATION**, the sufficiency of which is hereby acknowledged, the undersigned, **BANK OF AMERICA, N.A., WHOSE ADDRESS IS 4909 SAVARESE CIRCLE, TAMPA, FL 33634, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR),** by these presents does convey, grant, assign, transfer and set over the described Mortgage together with all interest secured thereby, all liens, and any rights due or to become due thereon to **SPECIALIZED LOAN SERVICING, LLC, WHOSE ADDRESS IS 8742 LUCENT BLVD., STE 300, HIGHLANDS RANCH, CO 80129 (800)315-4757, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Mortgage bearing the date **07/22/2008**, made and executed by **JOHN MALONE,** mortgagor(s), to **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR MBNA AMERICA (DELAWARE), N.A., ITS SUCCESSORS AND ASSIGNS,** mortgagee, and was recorded in the Office of the Register of Titles and County Recorder for **SUFFOLK** County, **Massachusetts,** in **Book 37778 and Page 245.**

Property is commonly known as: 26 SAVIN HILL AVE, DORCHESTER, MA 02125-1826.

**IN WITNESS WHEREOF,** this Assignment is executed by its VICE PRESIDENT **this 27th day of March in the year 2018.**

**BANK OF AMERICA, N.A., by NATIONWIDE TITLE CLEARING, INC., its Attorney-in-Fact**

*Angela Pavao*

**ANGELA PAVAO**
**VICE PRESIDENT**

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.



STATE OF FLORIDA   COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me on this 27th day of March in the year 2018, by Angela Pavao as VICE PRESIDENT of NATIONWIDE TITLE CLEARING, INC. as Attorney-in-Fact for BANK OF AMERICA, N.A., who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.



SHEILAH MORRIS
Notary Public - State of Florida
My Commission #GG 38533
Expires October 13, 2020

SHEILAH MORRIS
COMM EXPIRES: 10/13/2020

☐ No Mortgage Broker was involved in the placing of this loan.
   Mortgage Broker's Name:
   Address:
   License:

☐ No Mortgage Loan Originator was involved in the placing of this loan.
   Mortgage Loan Originator's Name:
   Address:
   License:

# Suffolk County Registry of Deeds

# Electronically Recorded Document

### This is the first page of the document - Do not remove

---

## Recording Information

| | |
|---|---|
| Document Number | ▉ |
| Document Type | |
| Recorded Date | February 13, 2023 |
| Recorded Time | 02 30 09 PM |
| | |
| Recorded Book and Page | 68693 / 285 |
| Number of Pages(including cover sheet) | 2 |
| Receipt Number | ▉ |
| Recording Fee | $105.00 |

**Suffolk County Registry of Deeds**
**Stephen J. Murphy, Register**
**24 New Chardon Street**
**Boston, MA 02114**
**617-788-8575**
**Suffolkdeeds.com**

This Instrument Prepared By:
COMPUTERSHARE TITLE SERVICES
c/o VISIONET SYSTEMS INC.
After Recording Return To:
COMPUTERSHARE TITLE SERVICES
c/o VISIONET SYSTEMS INC.
111 TECHNOLOGY DRIVE
PITTSBURGH, PA 15275

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, the undersigned, hereby grants, assigns, and transfers to **FEDERAL HOME LOAN MORTGAGE CORPORATION, AS TRUSTEE FOR THE BENEFIT OF THE FREDDIE MAC SEASONED CREDIT RISK TRANSFER TRUST, SERIES 2020-1** whose address is **1551 PARK RUN DRIVE, MCLEAN, VA 22102** all beneficial interest under that certain **MORTGAGE** dated **JULY 22, 2005** executed by:

BORROWER: **JOHN MALONE**

For **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS MORTGAGEE, AS NOMINEE FOR MBNA AMERICA (DELAWARE), N.A., ITS SUCCESSORS AND ASSIGNS, WHOSE ADDRESS IS P.O. BOX 2026, FLINT, MI 48501-2026** in the amount of **$103,394.00,** recorded **AUGUST 11, 2005** as Instrument No.: **2005 00105865** in Book/Volume: **37778** Page: **245** of the Official Records of **SUFFOLK COUNTY, MASSACHUSETTS**

Property Address: **26 SAVIN HILL AVE, DORCHESTER, MASSACHUSETTS 02125-1826**

**\*\*THIS ASSIGNMENT IS BEING RECORDED TO ADD FREDDIE MAC TO THE GRANTEE NAME PRECEDING "SEASONED CREDIT RISK TRANSFER TRUST SERIES 2020-1" LISTED IN A CERTAIN ASSIGNMENT OF MORTGAGE RECORDED IN THE SUFFOLK COUNTY REGISTRY OF DEEDS IN BOOK 62788, PAGE 237\*\***

**Effective date: 02/13/2023**

SPECIALIZED LOAN SERVICING LLC

By: _____
**ALYSSA M. GRAHAM**
**VICE PRESIDENT**

State of **PENNSYLVANIA**
County of **ALLEGHENY**

On this date, **FEBRUARY 13, 2023,** before me **BRYNN LAW,** the undersigned, a Notary Public in and for the county of **ALLEGHENY** in the State of **PENNSYLVANIA,** personally appeared **ALYSSA M. GRAHAM, VICE PRESIDENT** personally known to me to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity, and that for his/her signature on the instrument the person, or the entity upon behalf of which he/she acted, executed the instrument.

_____
**BRYNN LAW**
My Commission Expires: **11/22/2026**

Commonwealth of Pennsylvania - Notary Seal
Brynn Law, Notary Public
Beaver County
My commission expires November 22, 2026
Commission number [REDACTED]



# Delaware

Page 1

### The First State

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF MERGER, WHICH MERGES:

"SPECIALIZED LOAN SERVICING LLC", A DELAWARE LIMITED
LIABILITY COMPANY,

WITH AND INTO "NEWREZ LLC" UNDER THE NAME OF "NEWREZ LLC", A
LIMITED LIABILITY COMPANY ORGANIZED AND EXISTING UNDER THE LAWS
OF THE STATE OF DELAWARE, AS RECEIVED AND FILED IN THIS OFFICE
ON THE FIRST DAY OF MAY, A.D. 2024, AT 4:23 O`CLOCK P.M.



Jeffrey W. Bullock, Secretary of State

4336363  8100M
SR# 20241787581

Authentication: 203376707
Date: 05-01-24

You may verify this certificate online at corp.delaware.gov/authver.shtml

State of Delaware
Secretary of State
Division of Corporations
Delivered  04:23 PM 05/01/2024
FILED  04:23 PM 05/01/2024

# CERTIFICATE OF MERGER OF

## SPECIALIZED LOAN SERVICING LLC
### (a Delaware limited liability company)

### WITH AND INTO

## NEWREZ LLC
### (a Delaware limited liability company)

### May 1, 2024

Pursuant to Title 6, Section 18-209(c) of the Delaware Limited Liability Company Act (the "Act"), the undersigned limited liability company executed the following Certificate of Merger:

**FIRST**:  The name of each constituent company is Specialized Loan Servicing LLC, a Delaware limited liability company ("SLS"), and NewRez LLC, a Delaware limited liability company ("NewRez") and, together with SLS, the "Constituent Companies").

**SECOND**:  That certain Agreement and Plan of Merger, dated as of May 1, 2024 (the "Plan of Merger"), providing for the merger ("Merger") of SLS into NewRez has been approved, adopted, certified, executed and acknowledged by each of the Constituent Companies in accordance with 18-209 of the Act.

**THIRD**:  The name of the surviving Delaware limited liability company is NewRez LLC (the "Surviving Entity").

**FOURTH**:  The Certificate of Formation of the Surviving Entity in effect immediately prior to the Merger shall be the Certificate of Formation of the Surviving Entity until such time as it shall be amended as provided by law.

**FIFTH**:  The Merger is to become effective upon the filing of this Certificate of Merger with the Secretary of State of the State of Delaware.

**SIXTH**:  The Plan of Merger is on file at 601 Office Center Drive, Suite 100 Fort Washington, PA 19034, the place of business of the Surviving Entity.

**SEVENTH**:  A copy of the Plan of Merger will be furnished by the Surviving Entity on request, and without cost, to any member of the Constituent Companies or any person otherwise holding an interest in any other business entity which is to merge or consolidate into the Surviving Entity.

*[Signature follows]*