## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MASSACHUSETTS

**In Re:**
    **John Malone,**                                                     **Chapter 13**
                                                                      **Case No. 24-10885**
    **Debtor**

---

### MOTION TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS

John Malone ("Debtor") hereby move under 11 U.S.C. s. 363 and Bankruptcy Rule 6004(c) for authority to sell his interest in the real estate at 26 Savin Hill Avenue, Boston, MA, MA (the "Property") free and clear of liens and encumbrances. The notice of sale free and clear of liens and encumbrances will be served on all creditors listed by the Debtor and other parties in interest who have requested notice. The notice will give all parties in interest the opportunity to object and/or to make their liens known. Any interest in the property, when established, shall attach to the proceeds realized from the sale of the Property. The proposed buyer's bid of $765,000.00 with a life estate represents the highest price offered for the Property. This private sale is in the estate's best interest, as being the highest offer received by the Debtor.

The Debtor has the following recorded liens and encumbrances against the Property: a mortgage to Federal Home Loan Mortgage Company (c/o NewRez LLC d/b/a Shellpoint Mortgage Servicing) of approximately $153,000.00, a second mortgage to The Bank of New York Mellon of approximately $26,500.00 and past due water and sewer charges to the Boston Water and Sewer Commission of approximately $24,000.00. Other expenses of the sale include any legal fees, outstanding real estate taxes or trash fees and closing costs as required. After payment in full of the mortgages, secured claims, broker's fee, legal fees, and closing costs, all proceeds will be turned over to the Chapter 13 Trustee for distribution to creditors.

Notice to parties in interest will include the date of the hearing on this Motion and the time within which objections may be filed and served on the Debtor's counsel.

**Wherefore**, the Debtor requests that this Court issue an Order approving the attached form of Notice, allowing his Motion to Sell Real Property of the Estate Free and Clear of Liens,

and for such other relief as the Court deems just.

Date: October 7, 2025

Debtor,
by his attorney,

/s/ John Ullian
John Ullian, Esq. BBO No. 542786
Amy Puliafico, Esq. BBO No. 682332
The Law Firm of Ullian & Associates, P.C.
220 Forbes Road, Suite 106
Braintree, MA 02184
(781) 848-5980

**PURCHASE AND SALE AGREEMENT**
(hereinafter referred to as the "Agreement")

This _10_ day of _SEPTEMBER_ 2025

1. **PARTIES AND MAILING ADDRESSES**  
John Malone (hereinafter referred to as the "SELLER") agrees to sell and **28 Berkshire Avenue LLC** (hereinafter referred to as the "BUYER") (SELLER and BUYER sometimes hereinafter collectively referred to as the "Parties"), agrees to buy, upon the terms hereinafter set forth, the following described premises:

2. **DESCRIPTION**  
A certain parcel of land and the buildings and improvements thereon, known and numbered as **26 Savin Hill Avenue Boston Massachusetts,** as more particularly described in the deed recorded with Suffolk County Registry of Deeds in Book 12916, Page 283 (hereinafter referred to as the "Premises").

3. **BUILDINGS, STRUCTURES, IMPROVEMENTS, FIXTURES**  
Included in the sale as a part of the Premises are the buildings, structures, and improvements now thereon, and the fixtures used in connection therewith including, if any, all wall-to-wall carpeting, drapery rods, automatic garage door openers, venetian blinds, window shades, screens, screen doors, storm windows and doors, awnings, shutters, furnaces, heaters, heating equipment, stoves, ranges, oil and gas burners and fixtures appurtenant thereto, hot water heaters, plumbing and bathroom fixtures, garbage disposers, electric and other lighting fixtures, mantels, outside television antennas, fences, gates, trees, shrubs, plants, all fixtures and appliances in their current AS IS condition.

Specifically <u>excluded</u> from the sale are the following items: all SELLER's personal property.

*It is expressly understood that any items of personal property included with the sale are conveyed as a convenience to SELLER and for no additional consideration or attributed value*

4. **TITLE DEED**  
Said Premises are to be conveyed by a good and sufficient quitclaim deed running to the BUYER, or to the nominee designated by the BUYER by written notice to the SELLER at least seven (7) days before the deed is to be delivered as herein provided, and said deed shall convey a good and clear record and marketable title thereto, free from encumbrances, except
   (a) Provisions of existing building and zoning laws;
   (b) Existing rights and obligations in party walls which are not the subject of written agreement
   (c) Such taxes for the then current year as are not due and payable on the date of the delivery of such deed;
   (d) Any liens for municipal betterments assessed after the date of this Agreement;
   (e) Easements, restriction and reservations of record, if any, so long as the same do not prohibit or materially interfere with the current use of said Premises as a multi family dwelling.

5. **PLANS**  
If said deed refers to a plan necessary to be recorded therewith the SELLER shall deliver such plan with the deed in form adequate for recording or registration.

6. **REGISTERED TITLE**  
In addition to the foregoing, if the title to said Premises is registered, said deed shall be in form sufficient to entitle the BUYER to a Certificate of Title of said Premises, and the SELLER shall deliver with said deed all instruments, if any, necessary to enable the BUYER to obtain such Certificate of Title.

7. **PURCHASE PRICE**  
The agreed to purchase price for said Premises is **Seven Hundred Sixty-Five Thousand and 00/100 ($765,000.00) Dollars**, of which



| | | |
|---|---|---|
| (PdP) | $ ~~5,000~~ | having previously been paid to bind the "Offer to Purchase" |
| | $. ~~10,000.00~~ | have been paid as a deposit this day and |
| (PdP) | $ ~~755,000.00~~ 760,000 | are to be paid at the time of recording of the deed, by bank attorney's conveyancing, IOLTA or client's/trust account check(s) drawn on Mass Bank or wire transfer |
| | $ 765,000.00 | **TOTAL** |

30 

| | | |
|---|---|---|
| 8. | TIME FOR PERFORMANCE; DELIVERY OF DEED | Such deed is to be delivered at **10:00 AM on October 10, 2025 or within 14 days of bankruptcy court approval, whichever date occurs later**, at the office of counsel for BUYER's lender, unless otherwise agreed upon in writing. If the closing occurs at a location other than the Registry of Deeds, then the Seller shall not be charged by the closing attorney any type of courier fee to deliver the documents to the Registry for proper recordation. Neither the SELLER, nor SELLER's agents or attorney shall be required to attend the Closing but do agree to facilitate the transaction and ensure that the Deed, Power of Attorney, and other customary documents are delivered to the closing attorney. It is agreed that time is of the essence of this Agreement. Notwithstanding the foregoing, in the event SELLER fails to obtain Bankruptcy Court approval or before November 30, 2025, BUYER shall have the option of terminating the Agreement with all deposits returned to BUYER and without further recourse to either party. |

*As used in this Agreement, the words "time for performance," "closing" or "Closing" refer to the date, time, and place the deed is to be delivered to BUYER, as described in this clause, as the same may be extended per the terms of this Agreement or consent of the Parties.*

| | | |
|---|---|---|
| 9. | POSSESSION AND CONDITION OF PREMISES | Full possession of said Premises is to be delivered subject to the life estate tenant in Unit #3 at the time of the delivery of the deed, said Premises to be then (a) in the same condition as they were at the time of Buyer's Offer, reasonable use and wear thereof excepted, and (b) not in violation of said building and zoning laws, and (c) in compliance with provisions of any instrument referred to in Paragraph Four (4) hereof. The BUYER shall be entitled to inspect said Premises prior to the delivery of the deed in order to determine whether the condition thereof complies with the terms of this Agreement. Unit #1 and #2 shall be delivered free of all occupants and Unit #3 to be delivered occupied and subject to a life estate to be recited in the deed recorded at closing. **BUYER and SELLER expressly acknowledge and agree that the property is sold "AS IS" and SELLER shall not be required to deliver the Premises in broom clean condition. Any personal property remaining in any non- occupied areas shall be deemed abandoned by the SELLER.** |
| | | SELLER shall not be responsible for seasonal changes or for typical and natural losses to the grounds of the Premises including any loss of limbs and trees and other landscaping by natural causes, such as caused by storms, drought, flood, and the like, and water usage bans. |
| 10. | EXTENSION TO PERFECT TITLE OR MAKE PREMISES CONFORM | If the SELLER shall be unable to give good title pursuant to Paragraph Four (4) above, or to deliver possession of the Premises, all as herein stipulated, or if at the time of the delivery of the deed the Premises do not conform with the provisions hereof, then the SELLER shall use reasonable efforts to remove any defects in title, or to deliver possession as provided herein, or to make the said Premises conform to the provisions hereof, as the case may be, in which event the SELLER shall give written notice thereof to the BUYER, and thereupon the time for performance hereof shall be until the first to occur of the following: (a) the day before BUYER's mortgage and/or rate lock commitments expire, or (b) for a period of up to thirty (30) calendar days, as reasonably required by the SELLER to correct the defect. **The Buyer and Seller expressly acknowledge and agree that the Seller shall not be required to expend or incur any additional expenses to make the title or the premises conform or to deliver the possession as agreed.** |
| 11. | FAILURE TO PERFECT TITLE OR MAKE PREMISES CONFORM, etc. | If at the expiration of the extended time the SELLER shall have failed so to remove any defects in title, deliver possession, or make the Premises conform, as the case may be, all as herein agreed, or if at any time during the period of this Agreement or any extension thereof, the holder of a mortgage on said Premises shall refuse to permit the insurance proceeds, if any, to be used for such purposes, then any payments made under this Agreement shall be forthwith refunded and all other obligations of the Parties hereto shall cease and this Agreement shall be void without recourse to the Parties hereto. |
| 12. | BUYER's ELECTION TO ACCEPT TITLE | The BUYER shall have the election, at either the original or any extended time for performance, to accept such title as the SELLER can deliver to the said Premises in their then condition and to pay therefore the purchase price without deduction, in which case the SELLER shall convey such title, except that in the event of such conveyance in accord with the provisions of this Paragraph, if the said Premises shall have been damaged by fire, vandalism or other casualty, or in the event of a taking of all or a part of the Premises by eminent domain, then at BUYER's option, all payments made under this Agreement shall be refunded and all other obligations of the Parties hereto shall cease and this |

Agreement shall be void without recourse to either Party.

| | | |
|---|---|---|
| 13. | ACCEPTANCE OF DEED | The acceptance and recording of a deed by the BUYER or his nominee as the case may be, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the delivery of said deed. |
| 14. | USE OF MONEY TO CLEAR TITLE | To enable the SELLER to make conveyance as herein provided, the SELLER may, at the time of delivery of the deed, use the purchase money or any portion thereof to clear the title of any or all encumbrances or interests, provided that all instruments so procured are recorded simultaneously with the delivery of the deed, or in the case of mortgages granted by the SELLER to institutional lenders which are paid in full from the sale proceeds, within a reasonable time after the delivery of said deed in accordance with local conveyancing practices. |
| 15. | INSURANCE | Until the delivery of the deed, the SELLER shall maintain insurance on said Premises as follows: |

      *Type of Insurance*        *Amount of Coverage*

      (a) Fire and Extended Coverage        *$    as presently insured
      (b)

*All **risk of loss** in the event of damage to the premises shall remain with SELLER until the earlier of the recording of the deed or the disbursement of funds under a GAP Title Insurance Policy.*

| | | |
|---|---|---|
| 16. | ADJUSTMENTS | Water and sewer use charges and real estate taxes for the fiscal year in which the closing takes place, shall be apportioned and fuel value shall be adjusted, as of the day of performance of this Agreement and the net amount thereof shall be added to or deducted from, as the case may be, the purchase price payable by the BUYER at the time of delivery of the deed. BUYER shall obtain and bring to the closing a final water/sewer bill or reading for said apportionment/adjustment, or in the alternative, shall bring same to the closing along with evidence of payment of same. In the event any apportionment/adjustment pursuant to this Paragraph are, subsequent to the closing, found to be erroneous, then either Party hereto who is entitled to additional monies shall invoice (along with reasonably detailed back-up data) the other Party for such additional amounts as may be owing, and such amounts shall be paid, with good funds, within ten (10) days from the date of the invoice. This provision shall survive the delivery of the deed hereunder.<br><br>**TRANSFER TAX PAID BY SELLERS.** Sellers of properties in Massachusetts are required to pay a transfer tax at the rate of $4.56/$1,000 of sale price, except in Barnstable County [$6.48] which may be rounded upwards. Based on the current sale price and tax rates, the transfer tax (which will be deducted from SELLER's proceeds at the time of sale) is approximately **$3488.40** |
| 17. | ADJUSTMENT OF UNASSESSED AND ABATED TAXES | If the amount of said taxes is not known at the time of the delivery of the deed, they shall be apportioned on the basis of the taxes assessed for the preceding fiscal year, with a reapportionment as soon as the new tax rate and valuation can be ascertained; and, if the taxes which are to be apportioned shall thereafter be reduced by abatement, the amount of such abatement, less the reasonable cost of obtaining the same, shall be apportioned between the Parties, provided that neither party shall be obligated to institute or prosecute proceedings for an abatement unless herein otherwise agreed. |
| 18. | BROKER's FEE | N/A |
| 19. | BROKER(S) WARRANTY | N/A |
| 20. | DEPOSIT | All deposits made hereunder shall be held in escrow by **BUYER ATTORNEY/SETTLEMENT AGENT** (as escrow agent subject to the terms of this Agreement and shall be duly accounted for at the time for performance of this Agreement. In the event of any disagreement between the Parties, the escrow agent shall retain all deposits made under this Agreement pending instructions mutually given by the SELLER and the BUYER or a court of competent jurisdiction. The delivery, acceptance and recording of the Deed shall in all cases constitute the Parties' joint authorization for the release of all deposits held hereunder to the SELLER or Broker(s) in accordance with the disbursements outlined on a HUD Settlement Statement or similar closing statement executed by the Parties. |
| 21. | BUYER's DEFAULT; | If the BUYER shall fail to fulfill the BUYER's agreements herein, all deposits made hereunder by the |

|     |     |     |
| --- | --- | --- |
|     | DAMAGES | BUYER shall be retained by the SELLER as liquidated damages and this shall be SELLER's sole and exclusive remedy at both law and in equity for any default by BUYER hereunder. |
| 22. | RELEASE BY HUSBAND OR WIFE | The SELLER's spouse hereby agrees to join in said deed and to release and convey all statutory and other rights and interests in said Premises. |
| 23. | BROKER AS PARTY | N/A |
| 24. | LIABILITY OF TRUSTEE, SHAREHOLDER, BENEFICIARY, etc. | If the SELLER or BUYER executes this Agreement in a representative or fiduciary capacity, only the principal or the estate represented shall be bound, and neither the SELLER or BUYER so executing, nor any shareholder or beneficiary of any trust, shall be personally liable for any obligation, express or implied, hereunder. |
| 25. | WARRANTIES AND REPRESENTATIONS | The BUYER acknowledges that the BUYER has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth or incorporated in this Agreement or previously made in writing, except for the following additional warranties and representations, if any, made by either the SELLER or the Broker(s): **NONE**.

As used throughout this Agreement, "as is" means the condition the premises, with all defects and faults, known and unknown to BUYER, existing at the time of Buyer's offer to purchase of the premises (defined in Clause 9), reasonable wear and tear excepted.

SELLER expressly disclaims any statement, communication, representation, or warranty, express or implied, including but not limited the legal use or compliance of the premises with any law, ordinance, by-law, regulation, or code, made by SELLER, any representative or agent of SELLER, and any other person concerning the premises. The provisions of this clause shall survive the delivery of the deed, or the expiration or termination of this Agreement, as the case may be. |
| 26. | MORTGAGE CONTINGENCY CLAUSE | N/A |
| 27. | CONSTRUCTION OF AGREEMENT | This Agreement, executed in multiple counterparts, is to be construed as a Massachusetts contract, is to take effect as a sealed instrument, sets forth the entire contract between the Parties, is binding upon and ensures to the benefit of the Parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be canceled, modified or amended only by a written instrument executed by both the SELLER and the BUYER or their respective counsels. The Parties may rely upon facsimile copies of such written instruments. If two or more persons are named herein as BUYER and/or SELLER, their respective obligations hereunder shall be joint and several. The captions and marginal notes are used only as a matter of convenience and are not to be considered a part of this Agreement or to be used in determining the intent of the Parties to it. |
| 28. | LEAD PAINT LAW | The Parties acknowledge that, under Massachusetts law, whenever a child or children under six years of age resides in any residential premises in which any paint, plaster or other accessible material contains dangerous levels of lead, the owner of said premises must remove or cover said paint, plaster or other material so as to make it inaccessible to children under six years of age. |
| 29. | SMOKE AND CARBON MONOXIDE DETECTORS | Buyer shall, at the Closing, either obtain a waiver or deliver a certificate from the fire department of the city or town in which the Premises are located stating that the Premises have been equipped with approved smoke detectors and carbon monoxide detectors in conformity with applicable law. Buyer agrees to indemnify Seller if Buyer does not fulfill its obligations under this Section 25 prior to and at Closing. This Section 25 shall survive the Closing. |
| 30. | ADDITIONAL PROVISIONS | The SELLER's obligations herein are expressly contingent on the Deed from the SELLER to the BUYER reserving a life estate in favor of the SELLER during which life estate SELLER shall remain in Unit #3 for no additional consideration. Irrespective of the life estate, BUYER shall be solely responsible for the payment of all property taxes and water/sewer charges. The life tenant will be responsible for their own gas and electric.

This agreement is subject to written approval of the bankruptcy court and the seller's acceptance of said terms. |

The SELLER's obligations herein are expressly contingent upon the SELLER obtaining a termination of contract and release of all claims from the alleged BUYER for the P&S Agreement recorded at the Suffolk County Registry of Deeds in Book 71689, Page 210.

BUYER and SELLER further acknowledge and agree that BUYER shall obtain at their own cost and expense the final water reading. SELLER agrees to pay the final water bill at or prior to closing.

The executed "Riders A", attached hereto, are incorporated herein by reference. If any provision in the Rider or Addendum conflicts in any way with any other provision in Paragraphs One (1) through Thirty (30), inclusive, of this Agreement or with any addenda or exhibits hereto, the provision contained in the Rider or Addendum shall control.

FOR RESIDENTIAL PROPERTY CONSTRUCTED PRIOR TO 1978, BUYER MUST ALL HAVE SIGNED LEAD PAINT "PROPERTY TRANSFER NOTIFICATION CERTIFICATION"

**NOTICE: THIS IS A LEGAL DOCUMENT THAT CREATES BINDING OBLIGATIONS. IF NOT UNDERSTOOD, CONSULT AN ATTORNEY.**

By signing below, each of the parties certifies that he or she has completely read this Agreement, is fully satisfied with its terms, and has been represented by counsel of his or her choosing in the negotiation of this Agreement or has intentionally waived such right of representation.

Signed under seal as of the date first shown above.

SELLER: *[signature]*

SELLER: 28 Berkshire Ave LLC
BY: Peter D. Pascucco, Manager

BUYER: _____

BUYER: _____

# RIDER A

31. All notices required or to be given hereunder shall be in writing and deemed duly given when placed in the US Mail, postage prepaid, or sent via facsimile, or e-mail, or delivered addressed as follows:

    If to SELLER:
    Andrew N. Coppo, Esq.
    Greater Boston Title & Escrow, LLC
    60 Adams Street #207 Milton, MA 02186
    T 617-264-0376
    F 844-428-4853
    andrew@closingattorneyboston.com

    and
    If to BUYER:

    Peter D. Pasciucco, Esq.
    50 Redfield Street, Suite 201
    Dorchester, MA 02122
    T 617-265-3900
    C 508-259-4424
    ppasciucco@andersongoldman.com

    or to such other address or addresses as may from time to time be designated by either party by written notice to the other.

32. Any title matter or practice arising under or relating to this Agreement which is the subject of a title standard or practice standard of the REBA shall be governed by said title standard or practice standard to the extent applicable and to the extent such title standard or practice standard does not contradict any expressed term or condition of this Agreement.

33. BUYER warrants and represents to SELLER and SELLER represents and warrants to BUYER that it has dealt with no broker or other person entitled to a broker's commission in connection with the negotiation or execution of this Agreement or the consummation of the transaction contemplated hereby and each agrees to hold the other harmless and indemnify the other against all damages, claims, losses and liabilities, including legal fees, incurred by the other, arising out of or resulting from the failure of its representation and warranty. This provision shall survive the closing hereunder. Seller represents that there are no outstanding rights of first refusal or option to purchase the property.

34. All deposits referred to in Paragraph Twenty (20) are to be held in an FDIC insured (non-interest-bearing) account.

35. SELLER shall execute and deliver simultaneously with the delivery of the deed, and when required shall on oath swear to the truth of the matters therein set forth, such documents as may reasonably be required by BUYER's lender or BUYER's attorney, including without limiting the generality of the foregoing, certifications, or affidavits with respect to: (a) persons or parties in possession of the Premises; (b) facts or conditions which may give rise to mechanic's or materialmen's liens; (c) an affidavit pursuant to Section 1445 of the Internal Revenue Code; (d) the true purchase price of the Premises and whether the SELLER has or intends to lend to the BUYER a portion thereof; (e) urea formaldehyde foam insulation ("UFFI") Disclosure Affidavit stating there is no UFFI; and (f) 1099 reporting form. Seller shall not be required to indemnify, defend, or hold harmless Buyer, any Title Insurance Company or any other person, in any such closing document.

36. To the best of SELLER's knowledge, as of the date hereof, the SELLER has received no notice from any municipal, county, state or federal agency asserting or alleging that the Premises are or may be in violation of the provisions of any municipal, county, state or federal codes, ordinances, statutes or regulations relating to zoning, building, environmental or health matters. The SELLER shall make a similar representation as of the closing date. SELLER will promptly notify BUYER of any material change in facts which arise prior to the Closing which would make such representation untrue if such state of facts had existed on the date of execution of this Agreement.

37. The acceptance of the Deed by buyer on the Closing Date shall be deemed full performance and discharge of each and every agreement and obligation on the part of Seller hereunder to be performed. Any and all representations and warranties of Seller contained in this Agreement shall not survive the Closing Date and the delivery of the Deed, and shall be merged in the delivery of the Deed, unless otherwise expressly and specifically provided in the Agreement.

38. Both BUYER and SELLER hereby acknowledge that they have been offered the opportunity to seek and confer with qualified legal counsel of their choice prior to signing this Agreement.

39. Seller shall not be liable or bound in any way for any verbal or written statement, real estate broker or agent or employee of Seller, or any other person. It is understood and agreed that all prior and contemporaneous representations, statements, understandings and agreements, oral or written, between the parties merged in this Agreement, which alone fully and completely expresses their agreement, and that the same is entered into after full investigation, neither party relying on any statement or representation not embodied in this Agreement made by the other. This provision shall survive the closing hereunder.

40. BUYER warrants, represents and acknowledges to SELLER and agrees that SELLER is relying upon the following: By execution of this Agreement, BUYER acknowledges that BUYER has been provided ample opportunity to conduct any and all inspections of the Premises (either independently or through agents of the BUYER's choice), including all improvements thereon, and any and all component parts thereof, desired by the BUYER (and that the SELLER has no responsibility for any failure by the BUYER to fully exercise such inspection rights), including, without limitation, mechanical, structural, groundwater tables, utility systems, all appliances and personal property being conveyed with the Premises as provided in this Agreement, pest, termite, lead paint, asbestos, radon, mold and any hazardous chemicals, materials, or substances, dimensions and area of the Premises, and that BUYER is fully satisfied with the results of same, and accepts the Premises "AS IS" (as of the time of BUYER's inspection), reasonable use and wear thereof excepted, and is not relying upon any representations of the SELLER or SELLER's agents in connection with same and in connection with BUYER's decision to purchase the Premises (other than those specifically set forth in this Agreement), including, without limitation, as to the character, quality, use, value, quantity or condition of the Premises except as expressly set forth herein. BUYER further represents and agrees that the existence of any matter or condition revealed by, or which could have been revealed by, such inspections shall not be deemed to be a default by SELLER under this Agreement. Any statements which may have previously been made by the SELLER, including without limitation in any realtor's/broker's questionnaire or so-called "Seller's Disclosure Statement" or property listing information, if any, are specifically hereby voided and are superseded by this Agreement. BUYER acknowledges and agrees that SELLER shall have no obligation to repair any defect existing on the date of this Agreement. Without intending to limit the generality of the foregoing, SELLER does not warrant or represent that the Premises comply with current municipal, county, state or federal codes, ordinances, statutes, laws, regulations or the like, relating to zoning, building, environmental, health or any involving the maintenance, operation or condition of the Premises. BUYER hereby agrees that SELLER shall have no responsibility or liability for complying with any codes, ordinances, statutes, laws, regulations or the like which relate to lead paint, asbestos, radon, mold, hazardous chemicals, materials, or substances or any requirements that SELLER remove any or all of the same, BUYER hereby assuming any and all such responsibility and liability. SELLER makes no representations concerning the accuracy of any information provided by the realtor(s) or broker(s) unless expressly incorporated into this Agreement. The provisions of this paragraph shall survive the Closing and delivery of the Deed hereunder.

41. BUYER acknowledges that the SELLER and the Brokers, if any, have complied with the requirements of Massachusetts General Laws Chapter 111, as amended, relative to the possible presence of lead paint in the Premises, including the provisions of Section 197A of Chapter 111. BUYERS acknowledge having been verbally informed of the possible presence of dangerous levels of lead in the Premises and of the provisions of the Lead Paint Statute, so called (M.G.L. Chapter 111, Sections 190 - 199A), and the regulations promulgated thereunder, and acknowledge receipt from SELLER and/or SELLER's agents, of a Commonwealth of Massachusetts, Department of Health Property Transfer Notification Certification, and further acknowledges being informed by SELLER and/or SELLER's agents about the availability of inspections for dangerous levels of lead. BUYER further acknowledges that SELLER has allowed BUYER ten (10) days to conduct inspections to determine whether lead is present on the Premises. BUYER hereby releases SELLER, and SELLER's agents, from liability for any damages, cost or expenses BUYER incurs as a result of the presence of lead in the Premises or in the soil surrounding the Premises. A copy of the Property Transfer Notification Certification signed by the BUYER at the time of the Offer. The terms of said Certification shall survive the delivery of the Deed hereunder. The provisions of this Paragraph shall survive delivery of the Deed hereunder.

42. By executing this Agreement, the Buyer and Seller hereby grant to their attorneys, the actual authority to bind them for the sole limited purpose of allowing them to grant extensions, and the Seller and the Buyer shall be able to rely upon signatures of said attorneys as binding unless they have actual knowledge that the principals have disclaimed the authority granted herein to bind them. Further, for purposes of this Agreement, facsimile signatures shall be binding.

42. If the BUYER shall record this agreement in the Registry of Deeds or assigns his/her rights under this agreement to another (however this limitation of assignment shall not be read to impinge on or prohibit BUYER's right to designate a nominee under Paragraph 4 of this agreement), then, at the option of the SELLER, BUYER shall be deemed to be in default under this agreement and the SELLER's obligations under this agreement shall be at an end.

44. In the case of institutional mortgage payoffs being disbursed by the buyers closing attorney, in no event shall the seller be charged in excess of $35.00 for overnight courier fees total. Further, the closing attorney shall not collect in excess of five (5) days mortgage interest per diem with respect to REBA practice standard no. 17, the closing attorney shall be entitled to charge

no more than $105.00 per mortgage to obtain releases of said mortgage(s). Should the payoff provided by Seller include wire instructions, the closing attorney will send the proceeds for the payoff using those wire instructions and will not charge the Seller for this wire. Lastly, in the event the seller chooses to have their proceeds wired, the closing attorney shall be entitled to charge a reasonable wire fee, not in excess of $50.00.

45. The Seller expressly acknowledges that the Seller's counsel has not made any representations about the tax consequences of this transaction. The Seller has been advised by their attorney that the sale of premises may have tax consequence and to seek the advice of independent tax counsel. The Seller acknowledges that they have had the opportunity to seek the advice of independent tax counsel prior to signing this Agreement and agree to indemnify and hold harmless Andrew N. Coppo, Esq. from any and all tax liability regarding the sale of the Premises.

46. Notwithstanding anything contained herein to the contrary this Agreement shall not in any way be contingent on the sale or refinance of any of the BUYER'S real estate and any mortgage rejection based upon BUYER'S inability to sell or refinance his/her/their real estate shall not be a sufficient cause for the BUYER to terminate this Agreement under the Mortgage Contingency Clause and/or under this Purchase and Sale Agreement

47. All of SELLER's representations under this Agreement are to the SELLER's actual knowledge, and without conducting any independent investigation or inquiry and are not intended to imply or create any obligation for the SELLER to take additional actions or more further inquiry with regard to any topics contained within this Agreement or elsewhere, including but not limited to, documents, to be executed in conjunction with the Closing; furthermore, it is acknowledged and agreed by the Parties that any such representations shall not constitute a representation or warranty against the existence of such conditions about which SELLER has no knowledge, nor a representation or warranty against the discovery or occurrence of such conditions. Any representations and warranties made by the Seller shall terminate upon the recording of the deed. The provisions of this paragraph shall survive the Closing and delivery of the Deed hereunder.

48. The submission of a draft of this Agreement or summary of some or all of its provisions does not constitute an offer to sell or acceptance of an offer to buy the within Premises. It is understood and agreed that neither the BUYER nor the SELLER shall be legally obligated with respect to the purchase and sale of the within Premises unless or until this Agreement has been executed by both the BUYER and the SELLER and a fully executed copy thereof has been delivered to both Parties.

49. This Agreement supersedes all prior agreements and other understandings between the parties and represents the complete and full agreement of the parties hereto except as this Agreement is modified or altered by written agreement signed by the parties hereto. All prior offers and agreements between the parties with respect to the transaction contemplated hereby shall be null and void.

50. Both BUYER and SELLER hereby acknowledge that they have been offered the opportunity to seek and confer with qualified legal counsel of their choice prior to signing this Agreement. It is also acknowledged and presumed that the substance and form of this Agreement have been fully reviewed by the Parties hereto and approved as to form by their respective counsel. It is further acknowledged and agreed that no presumption shall exist against either party hereto by virtue of this Agreement being considered to have been drafted by counsel for either party thereto.

51. SELLER agrees that it shall be a condition to the closing hereunder that title to the property shall be insurable, for the benefit of the BUYER by a title insurance company in a fee owner's title insurance policy, at normal applicable premium rates, in the American Land Title Association form currently in use, subject only to printed exceptions normally included in said policy, and matters described in Paragraph 4 of this Agreement. It is furthermore agreed that in the event of a title matter for which a title insurance company is willing to issue a so-called "clean" policy or provide "affirmative coverage" over a known defect or problem, BUYER may elect to accept same but shall not be required to do so, and shall have the right, at the option of their counsel, to deem title to the premises unacceptable or unmarketable and to terminate this Agreement.

**NOTICE: THIS IS A LEGAL DOCUMENT THAT CREATES BINDING OBLIGATIONS. IF NOT UNDERSTOOD, CONSULT AN ATTORNEY.**

By signing below, each of the undersigned certifies that they have fully read this Agreement, is completely satisfied with its terms, conditions, and content, has been represented by counsel of their choosing in the negotiation and explanation of this Agreement (or has intentionally and consciously waived such right of representation), and acknowledges that the other party is relying on this certification in entering into this Agreement for the purchase and sale of the premises.

Signed under seal as of the date first shown above.

SELLER: _____

SELLER: 28 Berkshire Ave LLC
BY: Peter D. Pascucco, Manager

BUYER: _____

BUYER: _____

OLF 2A (Official Local Form 2A)

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS**

In re John Malone                                      Chapter 13

                                                       Case No. 24-10885

Debtor

**NOTICE OF INTENDED PRIVATE SALE OF PROPERTY,
SOLICITATION OF COUNTEROFFERS,
DEADLINE FOR SUBMITTING OBJECTIONS AND HIGHER OFFERS
AND HEARING DATE**

10/30/25          **IS THE DATE OF THE PROPOSED SALE**

_____         **IS THE DATE BY WHICH OBJECTIONS OR COUNTEROFFERS MUST BE MADE**

**NOTICE IS HEREBY GIVEN,** pursuant to 11 U.S.C. § 363, Fed. R. Bankr. P. 2002(a)(2) and 6004, and MLBR 2002-5 and 6004-1, that the trustee (or, where applicable, the debtor), intends to sell at private sale the debtor's right, title and interest in certain property of the estate.

**PROPERTY TO BE SOLD:**

(General description)

26 Savin Hill Avenue, Boston, MA

An itemized list of the property to be sold is attached to this Notice.

**THE OFFER:**

seven hundred sixty-five thousand dollars ($765,000.00) with a life estate

The trustee (or where applicable, the debtor) has received an offer to purchase the property for the sum of 765,000.00 _____ ($ 765,000.00 ) in cash (or state other consideration).

**THE PROPOSED BUYER:**

The proposed buyer is  28 Berkshire Avenue LLC, c/o Peter Pasciucco, Esq.  . The relationship of
(Name and address).

the proposed buyer to the debtor (or trustee, if applicable) is:  none

**THE SALE DATE:**

The sale shall take place on or before October 30, 2025 . The proposed buyer has paid a deposit in the sum of $ 5000 . The terms of the proposed sale are more particularly described in a Motion for Order Authorizing and Approving Private Sale of Property of the Estate (the "Motion to Approve Sale") filed with the Court on October 7, 2025 and a written purchase and sale agreement dated September 10, 2025 . The Motion to Approve Sale and the purchase and sale agreement are available at no charge upon request from the undersigned.

**SALE FREE AND CLEAR OF LIENS:**

The  26 Savin Hill Avenue, Boston, MA  will be sold free and clear of all liens, claims and encumbrances. Any perfected, enforceable valid liens shall attach to the proceeds of the sale according to priorities established under applicable law.

**COUNTEROFFERS OR OBJECTIONS:**

Any objections to the sale and/or higher offers must be filed in writing with the Clerk, United States Bankruptcy Court at  5 Post Office Square, Boston MA  (Boston, Springfield or Worcester address as applicable) on or before _____ at 4:30 PM (the "Objection Deadline"). A copy of any objection or higher offer also shall be served upon the undersigned. Any objection to the sale must state with particularity the grounds for the objection and why the intended sale should not be authorized. Any objection to the sale shall be governed by Fed. R. Bankr. P. 9014.

Through this Notice, higher offers for the Property are hereby solicited. Any higher offer must be accompanied by a cash deposit of $ 5,000.00 in the form of a certified or bank check made payable to the undersigned. Higher offers must be on the same terms and conditions provided in the Purchase and Sale Agreement, other than the purchase price.

**HEARING:**

A hearing on the Motion to Approve Sale, objections or higher offers is scheduled to take place on _____ at _____ AM/PM before the Honorable Judge Panos , United States Bankruptcy Judge, Courtroom _____, 5 Post Office Square, Boston, MA _____ , _____ , Massachusetts. Any party who has filed an objection or higher offer is expected to be present at the hearing, failing which the objection may be overruled or the

higher offer stricken. The Court may take evidence at any hearing on approval of the sale to resolve issues of fact. If no objection to the Motion to Approve Sale or higher offer is timely filed, the Court, in its discretion, may cancel the scheduled hearing and approve the sale without a hearing.

At the hearing on the sale the Court may 1) consider any requests to strike a higher offer, 2) determine further terms and conditions of the sale, 3) determine the requirements for further competitive bidding, and 4) require one or more rounds of sealed or open bids from the original offeror and any other qualifying offeror.

**DEPOSIT:**

The deposit will be forfeited to the estate if the successful purchaser fails to complete the sale by the date ordered by the Court. If the sale is not completed by the buyer approved by the Court, the Court, without further hearing, may approve the sale of the Property to the next highest bidder.

Any questions concerning the intended sale shall be addressed to the undersigned.

Respectfully Submitted,
TRUSTEE (or Debtor)

By Debtors' counsel,

Dated: October 7, 2025

/s/ John Ullian

Printed Name  John Ullian, Esq.
Address       220 Forbes Road, Suite 106,
BBO#          Braintree, MA 02184
Telephone     542786
Email         781-848-5980
              john@ullianlaw.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

In Re:

    **John Malone,**　　　　　　　　　　　　　　　　　　**Chapter 13**
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　**Case No. 24-10885**
    **Debtor**

## ORDER

After notice and opportunity for hearing, it is hereby ORDERED as follows:

1. Debtor is authorized to sell the property at 26 Savin Hill Avenue, Boston for $788,000.00 and a life estate pursuant to the Purchase and Sale Agreement dated September 10, 2025.

2. Debtor is authorized to sell the real estate free and clear of all liens, claims, interest and encumbrances with the same attached to the proceeds of the sale subject to their validity and order of priority.

3. Debtor is authorized to execute such documents as are necessary and incidental to the consummation of the transaction.

4. At the closing, the Debtor is ordered to pay the following from closing proceeds:

    a. the mortgage to Federal Home Loan Mortgage Company (c/o NewRez LLC d/b/a Shellpoint Mortgage Servicing) in full,
    b. the mortgage to The Bank of New York Mellon in full,
    c. any outstanding property taxes, and trash charges to the City of Boston in full,
    d. any outstanding water and sewer charges to the Boston Water and Sewer Commission in full, and
    e. the Debtor's closing fees and costs, including to his real estate attorney, Andrew Coppo.

5. Debtor can sell the subject property upon issuance of this Order and the Court waives the 14-day appeal period required by Bankruptcy Rule 6004(h).

6. Debtor shall provide a copy of the executed Settlement Sheet to the Chapter 13 Trustee within ten days after the closing.

7. Debtor's shall file an Amended Plan within 30 days of this Order

8. All proceeds from the sale after payments per clause number 4 shall be turned over to the Chapter 13 Trustee.

Date: _____　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS

**In Re:**

    **John Malone,**                                                **Chapter 13**
                                                                              **Case No. 24-10885**

    **Debtor**

---

## CERTIFICATE OF SERVICE

    I, John Ullian, hereby certify under the pains and penalties of perjury that I served the **MOTION TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS** by ECF or mailing a copy of same, postage prepaid, to the interested parties listed below and to all creditors on the attached service list.

| | |
|---|---|
| Richard King<br>Office of the US Trustee<br>J.W. McCormack Post Office & Courthouse<br>5 Post Office Sq., 10th Fl, Suite 1000<br>Boston, MA 02109 | Carolyn Bankowski<br>Chapter 13 Trustee Boston<br>P. O. Box 8250<br>Boston, MA 02114 |
| John Malone<br>28 Savin Hill Avenue<br>Dorchester, MA 02125 | American Building Construction, Inc.<br>82 Union St.<br>Quincy, MA 02169 |
| 28 Berkshire Ave LLC<br>Peter Pasciucco<br>50 Redfield Street, Suite 201<br>Boston, MA 02122 | The Bank of New York Mellon<br>Marcus Pratt<br>Korde & Associates, P.C.<br>900 Chelmsford Street, Suite 3102<br>Lowell, MA 01851 |
| Boston Water and Sewer Commission<br>Janet M. Mahoney, Assistance General Counsel<br>980 Harrison Avenue<br>Boston, MA 02119 | Chloe, LLC<br>c/o Ehrhard & Associates, P.C.<br>27 Mechanic Street, Suite 101<br>Worcester, MA 01068 |
| Andrew Coppo<br>Greater Boston Title & Escrow LLC<br>60 Adams Street, #207<br>Milton, MA 02186 | Elsie Dias<br>Age Strong Commission<br>1 City Hall Square<br>Boston, MA 02201 |
| Federal Home Loan Mortgage<br>Corporation/NewRez<br>Brian M Kiser<br>Marinosci Law Group, P.C. | Federal Home Loan Mortgage<br>Corporation<br>Jason Giguere<br>Zwicker & Associates, P.C. |

275 West Natick Road, Suite 500  
Warwick, RI 02886

80 Minuteman Road  
Andover, MA 01810

Federal Home Loan Mortgage Corporation  
Joseph Dolben  
Harmon Law Offices, P.C.  
150 California Street  
Newton, MA 02458

Date:   October 7, 2025

/s/ John Ullian  
John Ullian, Esq.  
220 Forbes Road, Suite 106  
Braintree, MA  02184  
(781) 848-5980  
BBO No. 542786

| | | |
|---|---|---|
| Label Matrix for local noticing<br>0101-1<br>Case 24-10885<br>District of Massachusetts<br>Boston<br>Thu May  8 09:06:01 EDT 2025 | American Building Construction, Inc.<br>82 Union St.<br>Quincy, MA 02169-6973 | Chloe, LLC<br>c/o Ehrhard & Associates, P.C.<br>27 Mechanic Street, Suite 101<br>Worcester, MA 01068 United States 01608 |
| Boston<br>U. S. Bankruptcy Court<br>J.W. McCormack Post Office & Court House<br>5 Post Office Square, Suite 1150<br>Boston, MA 02109-3945 | Attn: Massachusetts Dept. of Revenue<br>Bankruptcy Unit<br>PO Box 7090 Boston, MA 02204 | Bank of America, N.A.<br>475 Cross Point Pk<br>Getzville, NY 14068-1609 |
| Boston Water and Sewer Commission<br>980 Harrison Avenue<br>Boston, MA 02119-2530 | Boston Water and Sewer Commission<br>P.O. Box 55466<br>Boston, MA 02205-5466 | City of Boston Real Estate Tax<br>CITY OF BOSTON,  BOX 55808<br>Boston, MA 02205 |
| Discover Bank<br>2479 Edison Blvd, Unity A<br>Twinsburg, OH 44087-2475 | Fed Home Loan Mortgage Corp as Trustee<br>26 Savin Hill Ave<br>Dorchester, MA 02125-4099 | Fed Home Loan Mortgage Corp as Trustee<br>c/o Specialized Loan Servicing<br>P.O. Box 636005<br>Littleton, CO 80163-6005 |
| Federal Home Loan Mortgage Corp. Trustee (Se<br>c/o Newrez LLC<br>dba Shellpoint Mortgage Servicing<br>(fka Specialized Loan Servicing LLC)<br>6200 S. Quebec Street, Suite 300<br>Greenwood Village, Colorado 80111-4720 | Federal Home Loan Mortgage Corp. Trustee for<br>Freddie Mac Seasoned Credit Risk<br>c/o Shellpoint Mortgage Servicing<br>PO Box 10826 Greenville<br>Greenville, SC 29603-0826 | National Grid<br>P.O. Box 371338<br>Pittsburgh, PA 15250-7338 |
| Specialized Loan Servicing, LLC<br>Specialized Loan Servicing LLC<br>P.O. Box 636005<br>Littleton, CO 80163-6005 | The Bank of NY Mellon Indenture Trustee<br>c/o Bank of America, N.A.<br>475 Cross Point Pkwy PO Box 9000<br>Getzville, NY 14068-9000 | The Bank of New York Mellon<br>c/o Bank of America, N.A.<br>P.O. Box 31785<br>Tampa, FL 33631-3785 |
| Carolyn Bankowski-13-12<br>Chapter 13-12 Trustee Boston<br>P. O. Box 8250<br>Boston, MA 02114-0950 | John Malone<br>28 Savin Hill Avenue<br>Dorchester, MA 02125 | John A. Ullian<br>The Law Firm of Ullian & Associates, P.C<br>220 Forbes Road, Suite 106<br>Braintree, MA 02184-2711 |
| Richard King - B<br>Office of the US Trustee<br>J.W. McCormack Post Office & Courthouse<br>5 Post Office Sq., 10th Fl, Suite 1000<br>Boston, MA 02109-3934 | | |

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| | | |
|---|---|---|
| (u)28 Berkshire Ave LLC | (u)Federal Home Loan Mortgage Corporation, as | (u)The Bank of New York Mellon FKA The Bank |